**UPDATE ART, INC., Plaintiff,**

v.

**Joseph CHARNIN, "John Doe", Summit Card Shop, Inc. d/b/a "Hallmark," New Wave Card Shop, Inc., Ki Tae Kim d/b/a Kitty Cards, TTF Stationery, Saigon Express, the Health Nuts, the Tobacco Shop, Village T-Shirt, Noah's Gallery Inc. d/b/a "Art Show", Esa and Hasan, Ahn's Card Shop, Inc., Peggy's Card & Stationery, Oomi Posters, Gramercy Park Stationery, and Commuter Card & Gift Centre, Inc., Defendants.**

**No. 85 Civ. 5611–CSH.**

United States District Court, S.D. New York.

Jan. 28, 1986.

As Amended Feb. 21, 1986.

M. Scott Vayer, New York City, for plaintiff.

Harry Schochat, Vicki G. Cheikes, New York City, for defendant Charnin.

Lilling & Greenspan, White Plains, N.Y., for defendant Summit; A. Kate Huffman, of counsel.

Frank J. Colucci, New York City, for defendants Oomi, Ahn's, Commuter Card, Kitty Cards, Noah's Gallery.

Gottlieb, Rackman & Reisman, New York City, for defendant New Wave; James Reisman, of counsel.

Edward Meilman, New York City, for defendant Village T-Shirts.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This is an action arising from the alleged violation of various rights secured to plaintiff, Update Art, Inc., under both federal and state law in connection with plaintiff's publication of a print entitled "... AND I LOVE NEW YORK" (hereinafter sometimes referred to as the "artwork"). The work at issue is a colorful panoramic cartoon portraying a bustling, fictional New York City street corner. Plaintiff asserts causes of action for copyright and trademark infringement under federal law, and a variety of claims under New York law,[1] and seeks both equitable and monetary relief.[2] Subject matter jurisdiction in this

---

1. Plaintiff's alleged causes of action, denominated in the complaint and amended complaint as "counts," are as follows: copyright infringement under the Federal Copyright Act, 17 U.S.C. § 501 *et seq.* ("Count I"); false designation of origin under the Lanham Act, § 43, 15 U.S.C. § 1125 ("Count II"); common law unfair competition ("Count III"); trademark and trade name infringement and dilution under New York's General Business Law, N.Y.Gen.Bus.Law § 368–d (McKinney 1984) ("Count IV"); counterfeiting a work of fine art, misappropriation of plaintiff's reproduction rights, and fraud under New York's Arts and Cultural Affairs Law, N.Y.Arts & Cult.Aff.Law §§ 13.03, 13.07, 14.03, 14.53, 15.03.1, 15.05, 15.13, 15.17 (McKinney 1984) ("Counts V–X"); and common law misappropriation and conspiracy to misappropriate ("Counts XI–XII"). The First Amended Verified Complaint, filed with leave of the Court on September 9, 1985, and joining a number of additional defendants, asserts the same causes of action.

The Complaint and First Amended Verified Complaint also assert that "defendants, jointly and severally," have defamed plaintiff and its works. However, plaintiff does not appear to assert a separate cause of action for defamation.

2. Plaintiff seeks preliminary and permanent injunctions against further infringement and an accounting of profits, as well as seizure, impoundment, and destruction of infringing copies and any materials used for producing them. Plaintiff also seeks to require from each defendant monthly reports detailing the manner of their compliance with the Court's injunctive relief, including a written list from each defendant of all infringing copies of the artwork ever in their possession, including descriptions of the articles and statements of quantity. Finally, plaintiff seeks to hold defendants jointly and severally liable for money damages, costs, and attorney's fees.

Court over the federal trademark claim is premised on 28 U.S.C. § 1338(a)[3] and 15 U.S.C. § 1121,[4] over the federal copyright claims on 28 U.S.C. § 1338(a), and over the state unfair competition claims upon 28 U.S.C. § 1338(b).[5] Jurisdiction over the other state claims is premised upon principles of pendent jurisdiction. Because these state and federal claims clearly arise from a "common nucleus of fact," *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), jurisdiction in this Court over these state claims is proper.

The complaint was filed on July 23, 1985, naming as defendants Joseph Charnin, Summit Card Shop d/b/a "Hallmark" ("Summit"), New Wave Card Shop, Inc. ("New Wave"), Ki Tae Kim d/b/a Kitty Cards ("Kitty Cards") and one "John Doe" (collectively sometimes referred to hereinafter as the "original defendants"). Subsequently plaintiff sought leave to amend its Complaint to add a number of additional defendants (the "additional defendants"), including Ahn's Card Shop, Inc., Oomi Posters ("Oomi"), and Commuter Card & Gift Center, Inc. ("Commuter").[6] Leave to amend was granted, and plaintiff filed its First Amended Verified Complaint (the "Amended Complaint") joining the additional defendants.

The parties have made several motions which are presently pending before me. Original defendant Kitty Cards and additional defendants Ahn's Card Shop, Oomi and Commuter have moved pursuant to Fed.R.Civ.P. 6(b) for an enlargement of their time to answer the Complaint and Amended Complaint. Original defendants Charnin and Kitty Cards move to vacate in part an order issued August 2, 1985. By letter from counsel dated January 8, 1986, original defendant New Wave seeks to join the request for an enlargement of time and to vacate in part the order issued August 2, 1985. Several of the additional defendants have filed objections to a proposed order on notice submitted by plaintiff. Finally, original defendant Summit, which answered and cross-claimed against Charnin on August 14, 1985, and with whom plaintiff has settled, moves for an order of judgment by default against Charnin on Summit's cross-claim or, in the alternative, for a more definite statement pursuant to Fed.R.Civ.P. 12(e).[7]

## I. *Facts*

Plaintiff Update Art alleges that it owns the federally registered copyright in the artwork (First Amended Verified Complaint ¶¶ 1, 2). The certificate of copyright registration, bearing registration number VA 185–500, is appended as Exhibit 1 to the Complaint and Amended Complaint. The certificate states that the author of the work was Rolnik Publishers ("Rolnik"), the employer for hire of one Michael Kichka. The poster, according to the certificate, was first published in Israel on June 1, 1982. The certificate states that the copyright was transferred to Amos & Amos, Inc. ("Amos & Amos") and then to plaintiff. The effective date of Update Art's

---

3. 28 U.S.C. § 1338(a) provides, in pertinent part: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks."

4. 15 U.S.C. § 1121 provides: "The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."

5. 28 U.S.C. § 1338(b) provides: "The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws."

6. The other additional defendants are TTF Stationery, Village T-Shirt, Noah's Gallery d/b/a "Art Show" ("Noah's Gallery"), Esa and Hasan, Peggy's Card & Stationery, and Gramercy Park Stationery.

7. Several other motions involving discovery issues are also pending. These motions are respectfully referred to the Hon. Naomi Buchwald, United States Magistrate.

registration was May 13, 1985. The complaint states that it recorded the transfer of the copyright interests from Amos & Amos to plaintiff with the United States Copyright Office on or about June 28, 1985, before commencing the instant action, pursuant to section 101 of the Copyright Act, 17 U.S.C. § 205(d). (Complaint ¶ 25; Amended Complaint ¶ 49).

In the Complaint and the Amended Complaint, plaintiff alleges that all publicly distributed copies of the print published by Rolnik have the copyright notice in the form "(C) 1982, Rolnik Publishers." (Complaint ¶ 21; Amended Complaint ¶ 45). It further alleges that Amos & Amos was the exclusive distributor for the artwork from October 1982 until July 1984, when the rights were transferred to plaintiff. Since then, plaintiff claims to have been the exclusive distributor for the artwork. It has published the work in the form of posters and greeting cards (a copy of each of which is appended to the Complaint and Amended Complaint as Exhibit 2), and also, according to plaintiff, as prints and puzzles. (Complaint ¶ 24; Amended Complaint ¶ 48). The bottom border of the poster appended to the complaint bears the inscription, "(C) COPYRIGHT 1982 ROLNIK PUBLISHERS," and the reverse of the submitted greeting card also bears a copyright notice under the name "Rolnik Publishers." Both the card and poster versions bear the title "... AND I LOVE NEW YORK" in the border, and incorporated into the work is the artist's name with a copyright symbol dated 1982. Plaintiff alleges that it has granted no sublicenses, and that all publicly distributed copies of the work continue to bear copyright notice in the form "(C) 1982 Rolnik Publishers." (Complaint ¶ 24; Amended Complaint ¶ 48).

In its Complaint and Amended Complaint, plaintiff describes Charnin and "John Doe" as chief bootleggers of the plaintiff's work, alleging that Charnin and Doe, alone and in combination, illegally reproduced, manufactured, advertised, and sold counterfeit copies of the work, and conspired together to fraudulently misrepresent that they are the legitimate owners or licensees of the work. (Complaint ¶¶ 27–30, 35; Amended Complaint ¶¶ 51–54, 59). Plaintiff maintains that these allegedly counterfeit copies of its work are of inferior quality and that Charnin and Doe have distributed thousands of the counterfeit copies, causing irreparable harm to plaintiff. (Aff. of Danny Nechoushtan in Support of Order to Show Cause, ¶ 4). Plaintiff asserts that Charnin's violations were willful, citing an earlier, now-discontinued state action brought against Charnin by Amos & Amos for infringement of the "... AND I LOVE NEW YORK" work. (Complaint ¶¶ 31–34; Amended Complaint ¶¶ 55–58).

The other original defendants Summit, New Wave and Kitty Cards (the "original defendant-retailers") are retailers alleged to have sold copies of plaintiff's work to the public. Plaintiff alleges that written notices of copyright were sent by certified mail to Summit, New Wave and Kitty Cards. The delivery receipts for these mailings evidence receipt by each on June 25 or 26, 1985.

According to plaintiff, Ms. Frances Bertolini ("Bertolini"), at the request of plaintiff's president, Dan Nechoushtan, visited each of the original defendant-retailers on June 25, 1985 and purchased infringing copies of plaintiff's work. (Affidavit of Frances Bertolini in Support of Order to Show Cause, ¶¶ 2–4, 7–8, 11–12). Bertolini then went to each store again on July 1, 1985, after the stores had received the mailed notices of copyright. At Summit and New Wave she again purchased copies of the work which plaintiff maintains are infringing. (Bertolini Aff. ¶¶ 5–6, 9–10). At Kitty Cards, according to Bertolini, she was told that the store was sold out of its copies of the work, but that more would be available shortly. (Bertolini Aff. ¶ 13). Appended to plaintiff's papers are several copies of the allegedly infringing work. Comparison reveals that the alleged bootleg copies are identical with plaintiff's originals except in size and paper type. Plaintiff contends it does not publish the artwork in the size purchased from the origi-

nal defendant-retailers. (Aff. of Nechoushtan in Support of Order to Show Cause, ¶ 19).

The instant action was brought on by order to show cause signed on July 23, 1985. Plaintiff sought preliminary relief restraining defendants from infringing plaintiff's copyright, trademarks and tradenames; requiring each defendant to turn over to the plaintiff or to the Court all allegedly infringing copies of the work, as well as any materials used for reproducing copies of the work; and requiring each defendant to produce a written report of its compliance with the injunction and an itemization of all infringing copies.

At the hearing of the motion on July 29, 1985 (the "July 29 Hearing"), only plaintiff was represented by counsel. Charnin appeared for himself, Nam Lee for New Wave, Ki Tae Kim for Kitty Cards, and Irving and Gloria Rotwein for Summit. It did not seem that any of these defendants were corporations. Therefore I permitted these *pro se* appearances. Since the defendants were *pro se*, I explained the nature of the action and the relief sought at the outset of the proceeding. (July 29 Tr. at 2–5). The terms of the proposed preliminary relief were described, and it was explained that the proposed relief would issue "pending the final determination of this cause." (July 29 Tr. at 4). The defendants were asked to present to the Court reasons why the preliminary relief plaintiff sought should not issue. None of the original defendant-retailers presented any reasons why it should not be entered. In fact, Rotwein explicitly stated that he did not oppose the injunction (July 29 Tr. at 5, 9–10), and Lee stated he would no longer sell the allegedly infringing copies of the artwork (July 29 Tr. at 26).

Defendant Charnin admitted to having sold the allegedly infringing copies to the retailers and to having possession of other copies. However, he denied having any reproduction materials. (July 29 Tr. at 11). In response to the Court's invitation that he describe any reasons why the preliminary injunction should not issue, Charnin offered what might be characterized as a laches defense, arguing that plaintiff had been aware of the sale of the allegedly infringing copies long before it instituted the instant action. (See July 29 Tr. at 17). Counsel for plaintiff responded that laches would not lie in the instant action because the delay in plaintiff's filing the federal action resulted from efforts to work out the problem "amicably." (July 29 Tr. at 18).

Charnin also pointed out that the work in question indicated that the copyright notice on the work did not indicate that the copyright was owned by Update Art. The Court and plaintiff's counsel responded that the evidence indicated plaintiff had taken an assignment of the copyright. (July 29 Tr. at 16). Plaintiff appended documents which purport to memorialize said assignment to its papers in support of its order to show cause. (See Ex. 2 to Nechoushtan Aff. in Support of Order to Show Cause, appended to Order to Show Cause as Ex. B).

At the conclusion of the hearing, I concluded that on the basis of a number of undisputed facts plaintiff was entitled to the preliminary relief sought. Specifically, I found on the basis of the unchallenged verified motion papers that plaintiff was the beneficial owner of the registered copyright in the artwork. I further found that unauthorized reproduction of the artwork had taken place, and that the artwork was protected by the copyright laws. (July 29 Tr. at 28–29).

Upon these findings, I concluded that plaintiff was entitled to preliminary relief from the infringement of its copyright. I saw no need for a further evidentiary hearing on the preliminary injunction. Accordingly, I stated that a preliminary injunction would issue in the form requested by plaintiff, and plaintiff was directed to settle an order on notice. (July 29 Tr. at 28–30).

A proposed order on notice was served on each defendant on July 31, 1985. No defendant objected to the terms of the proposed order, and it was signed on August 2, 1985 (the "August 2 order"). The Au-

gust 2 order, issued pursuant to federal copyright law, 15 U.S.C. §§ 502, 503(a), federal and state trademark law, 15 U.S.C. §§ 1051, *et seq.*, N.Y.Gen.Bus.Law § 368, and Articles 13, 14, and 15 of New York's Arts and Cultural Affairs Law, enjoined the original defendants from infringing plaintiff's copyright, trademarks, and tradenames. It further required defendants to deliver to plaintiff or the Court all allegedly infringing copies of the artwork, all plates, molds, and other materials which could be used to reproduce the artwork items. The order also required that each defendant file sworn statements of compliance with the injunction, including an itemization of all copies of the artwork and of any reproduction materials held or disposed of by defendants and of any third parties known by defendants to have possessed such materials. Defendants were directed to file such statements at monthly intervals until two years following the entry of final judgment in the instant action.

Finally, pursuant to Rule 65(a)(2) of Federal Rules of Civil Procedure, the August 2 order consolidated the hearing on the merits with the preliminary injunction hearing, and held the undisputed facts found therein to be the law of the case. Defendants were thereby found jointly and severally liable "upon the claims alleged." I directed that the only issue remaining for trial was the prayer for "additional and permanent relief," including monetary relief. Original defendants Charnin and Kitty Cards contend that this August 2 order should be vacated insofar as it determined other than plaintiff's entitlement to preliminary relief.

Plaintiff then successfully sought leave to amend the complaint and join the additional defendants. The additional defendants are all retail stores alleged to have sold infringing copies of the artwork. On September 13, 1985, plaintiff noticed a motion for a preliminary injunction against the new defendants and seeking to hold the additional defendants bound by the August

2 order. Plaintiff's moving papers also sought to consolidate the merits of the claims against the additional defendants, except for damages, with the preliminary injunction hearing.

In its moving papers, plaintiff presented essentially the same case against the additional defendants as it had against the original retailer-defendants: Nechoushtan or Bertolini purchased an allegedly infringing copy of the artwork from each additional defendant. Each defendant was then given notice by certified mail of plaintiff's copyright claim. After each defendant's date of receipt of the notice, Nechoushtan or Bertolini purchased another copy of the allegedly infringing artwork from that defendant.

Plaintiff's application was heard on September 18, 1985 (the "September 18 Hearing"). At the September 18 hearing, plaintiff appeared by counsel, and those additional defendants who appeared were heard, *pro se.* The following day, I issued a written memorandum and order finding that none of the additional defendants had provided any reason to deny plaintiff equitable relief comparable to that issued in the August 2 order. Rather than applying the August 2 order to the additional defendants, however, I directed plaintiff to settle new orders on three days' notice. No mention was made in that memorandum and order of the request for consolidation.

Plaintiff noticed proposed orders against the additional defendants which would order preliminary relief identical in substance to the August 2 order. The proposed orders also would direct the hearing on the merits advanced and consolidated, and would hold the additional defendants jointly and severally liable on the plaintiff's claims and for attorney's fees. Several of the additional defendants, now represented b, ʔounsel, argue that the proposed order is inappropriate insofar as it grants other than preliminary relief.[8]

---

8. These additional defendants, now represented by common counsel, are Noah's Gallery, Ahn's Card Shop, Oomi, and Commuter. The hearing

of the motion as to additional defendant TTF Stationery was adjourned *sine die* by agreement of counsel. Additional defendant Village T-

## II. *The Motion for Enlargement of Time*

As a preliminary matter, I consider the motion by original defendant Kitty Cards and by additional defendants Ahn's Card Shop, Oomi and Commuter for an enlargement of their time to answer pursuant to Rule 6(b) of the Federal Rules of Civil Procedure. These defendants filed concededly tardy answers to the complaint and amended complaint on October 16, 1985.

■ By letter to the Court dated November 22, 1985, counsel for plaintiff indicated that it consented to such an extension. Accordingly, the motion for enlargement of time is granted and the answers on behalf of these defendants will be deemed timely filed.[9]

■ Original defendant New Wave has also requested an enlargement of time to file an answer. Plaintiff has not opposed that request. New Wave's request is therefore granted. New Wave, however, has yet to file an answer at all. Counsel for New Wave proposes no date by which it proposes to file and serve its answer, suggesting instead that it await the outcome of further efforts to settle its dispute with plaintiff. However, because the case against New Wave is now almost six months old, and because no significant progress toward settlement has been reported, I believe it prudent to establish a date by which New Wave must serve and file its answer. I therefore enlarge New Wave's time to answer *nunc pro tunc* to and including twenty (20) days from the date of this Memorandum Opinion and Order, unless extended with the Court's approval by stipulation of counsel.

## III. *The Motions Partially to Vacate the August 2 Order*

■ Original defendants Charnin and Kitty Cards argue that my August 2 order was improper insofar as it advanced and consolidated the trial on the merits with the preliminary injunction hearing.[10] Original

---

Shirt, also by newly retained counsel, argues that the proposed orders are inappropriate in holding the additional defendants liable on the claims other than copyright, trademark, and unfair competition. It does not appear to object to the consolidation on copyright, trademark, and unfair competition claims, but argues that the additional defendants should only be jointly and severally liable on those claims for acts in which they participated. It submits a proposed order which would either dismiss most of plaintiff's other causes of action, and which would order "counts" in the complaint requesting injunctive relief and attorneys' fees deemed part of the prayer for relief.

The remaining additional defendants are still *pro se,* and have not responded to the proposed order.

Insofar as Village T-Shirt's proposed counterclaim is in effect a motion to dismiss certain claims, I do not believe the settlement of the order on plaintiff's motion for preliminary relief and consolidation to be the appropriate vehicle for such a motion. If Village T-Shirt is so advised, it may move to dismiss these "counts" in a proper Rule 12 context.

Because plaintiff's case against all the additional defendants is substantially alike, and because I believe that consolidation is simply not appropriate, I do not now order consolidation with regard to any of the additional defendants. Accordingly, Village T-Shirt's other arguments appear moot.

9. It appears that before making the instant motion, counsel for Kitty Cards, Ahn's Card Shop, Oomi, and Commuter, attempted informally to obtain plaintiff's counsel's consent to the extension of time to answer and that plaintiff's counsel refused that initial request. Defendants' counsel now asserts in a letter to the Court dated November 27, 1985 that plaintiff's counsel's initial refusal was "without substantial justification," and that I should award these defendants attorney's fees.

I decline to order plaintiff to pay attorney's fees on the basis of defendants' counsel's effort by letter to broaden its motion for an enlargement of time to include an apparent request for Rule 11 sanctions. If defendants are so advised, they may move for such sanctions on proper motion papers.

10. Both Charnin's and Kitty Card's memoranda in support of their motions make clear that they do not contest the August 2 order's entry of preliminary injunctive relief.

On September 9, 1985, plaintiff filed a motion seeking an order of contempt against Charnin for violation of this Court's August 2 preliminary injunction. At that hearing, I found that Charnin had failed to comply with the reporting requirements of the August 2 order, and ordered Charnin to comply by September 11, 1985, failing which certain sanctions would issue. By order dated September 18, 1985, the remaining issues on the motion for contempt against Char-

defendant New Wave has joined their request that I partially vacate the August 2 order by its counsel's letter dated January 8, 1986. Plaintiff has filed papers in opposition to the motions by Charnin and Kitty Cards; it has submitted no further arguments in response to New Wave's letter. I therefore consider the requests to vacate by the three original defendants and plaintiff's arguments in opposition together. Since my August 2 order is interlocutory, *see Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 744, 96 S.Ct. 1202, 1206–07, 47 L.Ed.2d 435 (1975) (holding that determination of issue of liability alone, where undecided prayers for relief remain, is interlocutory rather than final in nature); *John Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82, 89–90, 42 S.Ct. 196, 198–99, 66 L.Ed. 475 (1922) (order granting permanent injunction was interlocutory where monetary relief remained at issue), and since I have not certified that there is no just reason to delay entry of judgment, *see* Fed. R.Civ.P. 54(b),[11] it is subject to revision, in my discretion, at any time before a final

nin were referred to the Honorable Naomi R. Buchwald, United States Magistrate, as special master for an evidentiary hearing pursuant to the Magistrate's Act. 28 U.S.C. § 636(b)(2). *See N.L.R.B. v. J.P. Stevens & Co.*, 563 F.2d 8, 13 (2d Cir.1977), *cert. denied*, 434 U.S. 1064, 98 S.Ct. 1240, 55 L.Ed.2d 765 (1978). Magistrate Buchwald held an evidentiary hearing on October 4, 1985 at which Charnin was represented by newly retained counsel. During the hearing, testimony was broken off, and the parties settled the contempt motion on the record. The settlement required Charnin, *inter alia*, to comply with the preliminary relief contemplated by the August 2 order and to pay plaintiff's attorney a sum of money by October 11, 1985.

In a subsequent telephone conference involving the Court, plaintiff's counsel, and Charnin's counsel, Charnin's attorneys sought to stay enforcement of the agreement settling plaintiff's motion against Charnin for contempt of the preliminary relief ordered on August 2, pending decision of an imminent motion on Charnin's behalf to vacate the August 2 order. I declined to stay execution of the so-ordered settlement, and instructed counsel for Charnin to proceed by formal motion if they sought to vacate the August 2 order and stay the settlement.

Charnin, however, made no such motion. He has not sought relief from the preliminary aspects of the August 2 order or from the settlement agreement in his moving papers. Accordingly, I conclude that Charnin has abandoned these applications.

In opposition to the instant motion, plaintiff argues in part that the settlement of the contempt motion bars Charnin from seeking relief from the August 2 order. However, the settlement committed Charnin only to the preliminary aspects of the August 2 order. Obviously, then, Charnin has not "settled" as to the other aspects of the August 2 order. Since Charnin does not seek relief from the preliminary aspects of the August 2 order, plaintiff's argument, to the extent it concerns the issue of preliminary relief, attacks a straw man.

Charnin and Kitty Cards also argue that the August 2 order should be vacated insofar as it found defendants jointly and severally liable on plaintiff's claims. Because I vacate the consolidation order and only preliminary injunctive relief will remain, the finding that defendants are jointly and severally liable falls as well. Therefore, I need not and do not reach the merits of this issue; it will be determined, if need be, at an appropriate later time.

Charnin also argues in support of his motion that there is an outstanding factual issue as to whether service of process was properly effected. However, even if Charnin ever had an effective defense based on defective service, it is clear that he has waived that defense and submitted to the jurisdiction of the Court. With the advice and participation of counsel, Charnin entered into a stipulation in open court before Magistrate Buchwald in settlement of a motion for contempt against him for violating the August 2 preliminary injunction order. The stipulation was "so ordered" by Magistrate Buchwald, and Charnin, under questioning by his own attorney, expressly agreed to be bound by it. *See Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 716–17 (2d Cir.1974) (per curiam) (holding that it was reversible error to grant a defendant's motion to dismiss for want of *in personam* jurisdiction after parties had entered into a stipulation and agreement of settlement which was "so ordered" by the district court). It is far too late for Charnin now to contest the sufficiency of service of process.

---

11. Fed.R.Civ.P. 54(b) provides:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to

decree is entered. Fed.R.Civ.P. 54(b); *see Marconi Wireless Co. v. United States,* 320 U.S. 1, 47–48, 63 S.Ct. 1393, 1414–15, 87 L.Ed. 1731 (1943); *John Simmons Co., supra,* 258 U.S. at 88, 90–91, 42 S.Ct. at 199, 200; *Bon Air Hotel, Inc. v. Time, Inc.,* 426 F.2d 858, 862 (5th Cir.1970). Accordingly, I proceed to the merits of these motions.

█ Rule 65(a)(2) of the Federal Rules of Civil Procedure expressly contemplates that a federal district court may in its discretion advance and consolidate trial on the merits with a hearing on an application for preliminary relief "[b]efore or after the commencement of the hearing." [12] Fed.R. Civ.P. 65(a)(2); *see Leesona Corp. v. Varta Batteries, Inc.,* 522 F.Supp. 1304, 1310 n. 14 (S.D.N.Y.1981). In light of the haste and informality that often accompany hearings on applications for preliminary relief, however, the power to advance the merits to the preliminary injunction stage should be exercised with caution. *See University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981) (in light of procedural posture of preliminary injunction hearing, "it is generally inappropriate at the preliminary injunction stage to give a final judgment on the merits"); *Bell & Howell: Mamiya Co. v. Masal Supply Co.,* 719 F.2d 42, 46 (2d Cir. 1983).

█ Where consolidation is to be ordered, "the parties should normally receive clear and unambiguous notice to that effect either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases." *Pughsley v. 3750 Lake Shore Drive Cooperative Building,* 463 F.2d 1055, 1057 (7th Cir.1972) (Stevens, J.), quoted with approval in *Camenisch, supra,* 451 U.S. at 395, 101 S.Ct. at 1834; *see also*

*Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 101 (2d Cir.1985). Rule 65(a)(2) does not make clear how late after commencement of the preliminary injunction hearing is too late to give notice of the court's intention to consolidate; the sufficiency of notice depends on the circumstances of each case. *Cf. SEC v. Capital Growth Corp.,* 391 F.Supp. 593, 600 (S.D.N.Y.1974) (Stewart, J.) (sufficiency of notice of preliminary injunction hearing is for "trial court's determination under the circumstances of each particular case"). But the parties must be given sufficient notice that their "final day in court has come," *Hollis v. Itawamba County Loans,* 657 F.2d 746, 749 (5th Cir.1981) (Tate, J.), to allow them "adequately to develop their entire case." *Warehouse Groceries Management, Inc. v. Sav-U-Warehouse Groceries, Inc.,* 624 F.2d 655, 658 (5th Cir.1980). Ordinarily, then, notice given after the conclusion of the hearing will be insufficient, and even raises constitutional due process concerns. *Gellman v. Maryland,* 538 F.2d 603, 604–06 (4th Cir.1976); *see also Warehouse Groceries, supra,* 624 F.2d at 658; *T.M.T. Trailer Ferry v. Union De Tronquistas, Local 901,* 453 F.2d 1171, 1172 (1st Cir.1971); *DeLeon v. Susquehanna Community School District,* 747 F.2d 149, 155–56 (3d Cir.1984) (Sarokin, J., concurring).

█ In the instant case, it is now clear that the original defendants were given notice that their "final day in court had come" only after the July 29 hearing was concluded. Indeed, contrary to plaintiff's protestation (see Plaintiff's Memorandum of Law in Opposition to Defendants Charnin's and Kim's Motion Under F.R.C.P. 60(b) and In Support of Plaintiff's Proposed Orders at 15, 21), the first and only notice the original defendants received of the consolidation was the settlement of the pro-

---

any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

**12.** Fed.R.Civ.P. 65(a)(2) provides, in pertinent part:

*"Consolidation of hearing with trial on merits.* Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application."

posed order which was signed August 2. Plaintiff's order to show cause sought only preliminary relief.

Moreover, the transcript of the July 29 Hearing shows that on several occasions I indicated that the proceedings concerned only preliminary relief. For example, at the outset of the hearing, I explained to the *pro se* defendants that the order which plaintiff sought would require certain actions from them "pending final determination of this cause." (July 29 Tr. at 4). At the conclusion of the hearing I indicated that I saw no need for a further evidentiary hearing "within the preliminary injunction context." (July 29 Tr. at 28). Indeed, I explicitly stated at the hearing that I would "enter a preliminary injunction in the form for which the plaintiff prays in the notice of motion," and that that order to show cause was all that was pending. (July 29 Tr. at 29). Plaintiff's counsel was then directed to "settle an appropriate order on notice." (July 29 Tr. at 32). I gave no indication that the order should also consolidate the merits of the action with the already concluded preliminary injunction hearing.

Of course, the order submitted to the Court by plaintiff and signed on August 2 was settled on notice to the original defendants. The proposed order was served by hand on each defendant on July 31, 1985. No objections to the terms of the proposed order were submitted by any defendant, and the proposed order was signed on August 2, 1985. Plaintiff argues that this notice period afforded the original defendants an opportunity to come forward with further evidence. (Plaintiff's Mem. of Law, at 21–22).

I cannot agree that these *pro se* defendants were afforded sufficient notice of an opportunity to present further evidence by the mere settlement of the proposed order on notice. The proposed order contained no suggestion that the original defendants should submit further evidence. The settlement of the proposed order was designed not to invite evidentiary submissions, but to help assure that an appropri-

ate order would be entered. The very terms of the proposed order indicated that the presentation of evidence had been completed. Even if I were to accept the doubtful proposition that a three-day notice period one week after the commencement of the lawsuit was sufficient to permit the original defendants acting *pro se* to assess the need for further evidence, obtain it, and present it, it was simply not the purpose of the settlement of the order to invite further evidentiary submissions. In the circumstances of this case, I do not believe that the original defendants were given "clear and unambiguous notice" of consolidation early enough to permit them to prepare and present their cases. *See Camenisch, supra*, 451 U.S. at 395, 101 S.Ct. at 1834.

I also do not believe that the settlement on notice of the August 2 order, in the circumstances of this case, gave the original defendants sufficient notice of the proposed consolidation to deem their failure to object to the proposed order during the notice period a waiver of the objection. Of course, at some point in the proceedings failure timely to object to consolidation may give rise to waiver of the objection. *See Fenstermacher v. Philadelphia National Bank*, 493 F.2d 333, 337 (3d Cir. 1974); *DeLeon v. Susquehanna Community School District*, 747 F.2d 149, 156 (3d Cir.1984) (Sarokin, J., concurring); *cf. Johnson v. White*, 528 F.2d 1228, 1231 (2d Cir.1975) (Friendly, J.). But on the facts presented here, I do not believe that the settlement of the proposed order constituted sufficient notice to the original defendants to consider their failure to object during that period a waiver of the objection. As noted earlier, on several occasions during the course of the July 29 hearing I commented that the proceeding concerned only preliminary relief. Counsel for plaintiff was instructed only to settle a preliminary injunctive order. The proposed order served by plaintiff on the original defendants was simply titled "Order." The notice of settlement, contained in a standard "blue back" indicated only that the order

**38**

was "for preliminary injunction, impoundment, etc."

 Of course, had they carefully read the contents of the proposed order, the original defendants might have realized that what was proposed was considerably more extensive than what they had been warned of at the July 29 hearing. But at this state, only about a week after the suit was commenced, the original defendants were all acting *pro se*. Although *pro se* parties are not exempt from relevant procedural and substantive law, courts must "make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). I decline to consider original defendants' failure to object during the notice period a waiver of their objections to consolidation.

Plaintiff further argues that the original defendants waived any objections to the consolidation because of their delay in moving to vacate the August 2 consolidation order. (Plaintiff's Mem. of Law, at 21). Kitty Cards, by newly retained counsel, first indicated that it would seek to vacate the consolidation order by letter to the Court dated October 11, 1985. It made its formal motion to vacate a week later.

Charnin first filed a motion to vacate on September 6, 1985, while still acting *pro se*.[13] Attached to his motion papers is an unnotarized form "Affirmation of Service" stating that he served the papers on plaintiff by leaving them with a security guard at its place of business. Plaintiff does not appear to have responded to this motion, and Charnin's newly retained counsel do not refer to that motion in their motion papers filed on his behalf. But in any case, the latest it can be said that Charnin effectively interposed an objection to the August 2 order and apprised plaintiff of the objection was October 11, 1985, when his attorneys filed the motion to vacate on his behalf.

 I do not believe that Charnin and Kitty Cards should be considered to have forfeited their objections to the consolidation order by dint of this two-and-one-half month delay. The case law and the Federal Rules of Civil Procedure specifically contemplate that interlocutory orders may be modified at "any time." *John Simmons Co., supra*, 258 U.S. at 89–90, 42 S.Ct. at 198–99; Fed.R.Civ.P. 54(b) (cases involving multiple claims or parties). The decision whether to reconsider an earlier decision is discretionary with the district court. *Marconi Wireless Co. v. United States*, 320 U.S. 1, 47–48, 63 S.Ct. 1393, 1414–15, 81 L.Ed. 1731 (1943). This is not a situation like failure to object to a proffer of evidence at trial where failure to make a virtually contemporaneous objection could result in the need for a retrial. Nor is this a situation where parties have waited until the appellate stage to challenge a consolidation order. *Compare Fenstermacher, supra*, 493 F.2d at 337; *cf. Johnson v. White*, 528 F.2d 1228, 1231 (2d Cir.1975). Failure to raise an objection at the district court level, of course, means that the district court never has an opportunity to correct the alleged error, and results in appellate litigation that could have been entirely avoided.

Here, Charnin and Kitty Cards have raised objections to the consolidation order at the district court level. Furthermore, their two-and-one-half month delay in filing their motions partially to vacate the August 2 order was not asserted so late in the proceedings that a significant waste of judicial resources resulted. And plaintiff has not shown any prejudice to itself resulting from the delay. Accordingly, I decline to find that Charnin and Kitty Cards have lost their right to move to vacate the consolidation order.

**13.** Charnin's Memorandum of Law in Support of his motion appears to be an almost verbatim copy of the Memorandum of Law filed August 14, 1985 on behalf of Summit. Summit's motion was subsequently withdrawn pursuant to the consent judgment entered into by Summit and plaintiff on September 16, 1985.

In order to obtain a vacatur of the August 2 order, however, the original defendants must show not only that the order was entered in error, and that they have timely challenged the order, but also that they were prejudiced by the order. The Federal Rules of Civil Procedure direct the courts to disregard "any error or defect in the proceeding which does not affect the substantial rights of the parties." Fed.R. Civ.P. 61. *Cf. Acha v. Beame*, 531 F.2d 648, 651 (2d Cir.1976); *Abraham Zion Corp. v. Lebow*, 593 F.Supp. 551, 572 (S.D. N.Y.1984) (Motley, C.J.), *aff'd*, 761 F.2d 93 (2d Cir.1985).

■■■■■■ In this case, I believe that there has been a sufficient showing of prejudice to justify vacating the August 2 order insofar as it ordered consolidation. In this case, as is often true, the preliminary injunction hearing followed by less than a week the filing of the complaint and signing and service of the order to show cause. In such circumstances, parties can be prejudiced simply by the insufficient opportunity to conduct discovery and otherwise investigate and develop defenses to the action. *See Paris v. United States Department of Housing & Urban Development*, 713 F.2d 1341, 1346 (7th Cir.1983); *Gellman v. Maryland*, 538 F.2d 603, 605–06 (4th Cir.1976); *cf. Abraham Zion Corp.*, 593 F.Supp. at 572 (finding no prejudice where party had had sufficient warning of consolidation and sufficient opportunity to

undertake discovery). In the instant case, Kitty Cards has asserted certain defenses in its answer, and Charnin raised potential defenses to plaintiff's claims in argument.[14] I intimate no view as to the merits of these defenses at this stage, but I cannot say at this stage that they are so frivolous that the original defendants should not have a "reasonable opportunity" to investigate them through discovery. *See Gellman, supra*, 538 F.2d at 606; *Abraham Zion Corp., supra*, 593 F.Supp. at 572. *Compare Brass v. Hoberman*, 295 F.Supp. 358, 365 (S.D.N.Y.1968) (ordering consolidation after finding "no discernible reason" why parties would need further discovery).

Plaintiff argues, however, that the consolidation order caused no prejudice because there are no "material issues of fact" remaining for trial. *See, e.g., Reese Publishing Co. v. Hampton International Communications, Inc.*, 620 F.2d 7, 12 (2d Cir.1980); *Socialist Workers Party v. Illinois Board of Elections*, 566 F.2d 586, 587 (7th Cir.1977), *aff'd*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979). Indeed, plaintiff contends that I already found that there were no material issues of fact remaining for trial.

■■■■■■ The transcript of the July 29 hearing does show that I stated that there were no "triable issue[s] of fact on a material issue in the case." (July 29 Tr. at 28). However, a review of the transcript of the

---

**14.** It appears from the record that Charnin may not have timely answered the complaint and may therefore be in default. The complaint appears to have been served on July 24, 1985. Charnin filed a document on August 5, 1985 in the form of a letter addressed to the Court arguing that plaintiff's copyright was for several reasons invalid. Charnin did not file anything denominated an answer until September 4, 1985. On that date, Charnin filed *pro se* a one-page document titled "Answer and Cross-Claim," which does not resemble an answer that would have been filed by competent counsel. In three numbered sentences, Charnin simply stated that he would like to be able to question Bertolini and Nechoushtan concerning their affidavits submitted in support of plaintiff's order to show cause, that many statements in those affidavits were incorrect. However, Charnin did begin his "answer and cross-claim" with the

indication that the document was meant to "answer[ ] the complaint herein."

Although it is not clear whether Charnin has timely answered, it does not follow that he has not been prejudiced by the consolidation order and that the order should not be vacated. Charnin has asserted potential defenses in argument and by letter. The appropriate context for considering the effect of a failure timely to answer is in a motion for a default judgment. The questions whether Charnin has timely answered, or if he has not should be permitted to ˑrˑwer late, have not been addressed in the papers on the instant motion. If plaintiff is so disposed, it may of course move for a default judgment; but to deny Charnin's motion to vacate the consolidation order because of the possibility that he has defaulted would *de facto* result in judgment by default when that issue has not been raised or addressed by the parties.

**40**

July 29 hearing and papers presented in support of the preliminary injunction shows that no evidence was presented, or arguments made, concerning the non-copyright "counts" of the complaint. For example, since plaintiff offered no evidence that its trademark has been registered with the United States Patent and Trademark Office, nor any other evidence regarding the validity of its trademark, it cannot be said that plaintiff established a likelihood of success on the merits on its trademark claim. *See Reese Publishing Co. v. Hampton International Communications, Inc.*, 620 F.2d 7, 11 (2d Cir.1980) (burden is on plaintiff to prove validity of a trademark unless the mark is registered with the United States Patent and Trademark Office). My ruling in favor of plaintiff's motion was based on my finding that it was the present beneficial owner of the valid, registered copyright in the artwork, and that there had been unauthorized copying and sale of that work. (July 29 Tr. at 28–29). I made no findings of fact and conclusions of law on the other claims. Accordingly, to the extent the August 2 order indicates that a hearing had been held on the non-copyright claims, and finding made, it clearly overstated the extent of my findings at the July 29 hearing.

 The issue is less easily resolved regarding the copyright claim. I have no doubt that plaintiff made a more than adequate showing of probability of success on the merits on its motion for a preliminary injunction. There was no significant dispute on any issues of fact regarding the essential elements of plaintiff's prima facie case: ownership of a valid copyright and copying. *See Novelty Textile Mills v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d

Cir.1977). It was in that context that I concluded that there was no need for an evidentiary hearing on plaintiff's preliminary injunction motion. But since at least Charnin among the original defendants has articulated arguable defenses to permanent injunctive relief,[15] I conclude that the early consolidation resulted in prejudice on the copyright claim as well and should also be vacated.

Plaintiff contends that it was incumbent upon the original defendants to come forward with material evidence in support of their motion to vacate. It is true that the United States Court of Appeals for this circuit has held that an appeals court will not disturb an order of consolidation "absent a showing of substantial prejudice in the sense that a party was not allowed to present material evidence." *Abraham Zion Corp., supra,* 761 F.2d at 101; *see also Johnson v. White,* 528 F.2d 1228, 1231 (2d Cir.1975) (Friendly, J.). However, these cases involved efforts to reverse an order of consolidation on appeal; they did not purport to limit a district court's discretion in deciding a motion to vacate a consolidation order. Moreover, in these cases, the actions had been pending for some time before the consolidation order allowing ample time for discovery and case preparation. *See Abraham Zion Corp.,* 761 F.2d at 99, 101 (case pending three months before hearing, and hearing was interrupted and adjourned thirteen days after court announced consolidation in middle of proceedings); *Johnson,* 528 F.2d at 1230–31 (case pending for eight months before consolidation ordered).

Accordingly, I conclude that the August 2 order, to the extent it ordered the trial on the merits consolidated with the hearing of

**15.** While still appearing *pro se,* Charnin argued in effect that Update Art's appeal to equity should be barred by laches. (July 29 Tr. at 17–18). He also argued in a letter to the Court that the artwork is obscene and accordingly non-copyrightable. Furthermore, counsel for Charnin, arriving upon the scene relatively recently, argue in their papers in support of the instant motion that Charnin ought to be permitted to investigate the possibility of defenses based on laches or abandonment.

I intimate no present views on the merits of these defenses. But since in any event the permanent injunction must be vacated in respect of the trademark and other aspects of the case, it is just as well to vacate the permanent injunctions in their entirety; and as to all defendants, since if the argument of one of them is sound, it may be sound as to all.

the preliminary injunction motion, should be vacated. The motions partially to vacate that order are granted.

The preliminary relief ordered August 2 will remain in full effect. However, because I no longer consider the question of liability closed, the extension of the reporting requirements to two years beyond the date of final judgment is inappropriate. The reporting provisions will apply until the date of final judgment; any need for further reporting will be considered at that time.

Finally, because evidence or argument was heard only on plaintiff's copyright claims, that portion of the August 2 order which founds the issuance of preliminary relief upon other causes of action is also inappropriate. The August 2 order is hereby vacated and a superseding order consistent with the terms of this opinion will be entered concurrently herewith.

## IV. *The Proposed Orders Against Additional Defendants*

The proposed orders against the additional defendants present slightly different issues from those presented by the challenge to the August 2 order. However, I have concluded that I should reject plaintiff's proposed orders insofar as they would order consolidation of the hearing on the merits with the hearing on the preliminary injunction.

Unlike the motion for preliminary relief brought on by plaintiff by order to show cause on July 23, 1985, plaintiff's motion papers for preliminary relief against the additional defendants explicitly included a request that I consolidate the ultimate question of liability with the hearing on the preliminary injunction.[16] The motion papers referenced the papers in support of plaintiff's motion to amend its complaint and join new defendants. Those papers contained affidavits from Nechoushtan and Bertonini, certified mail receipts, and sales receipts from each additional defendant indicating that each additional defendant had sold the infringing version of the artwork, and did so on at least one occasion after receiving letters notifying them of plaintiff's copyright claim.

The motion was heard on September 18, 1985. Several, but not all, of the additional defendants appeared. None of those who appeared were represented by counsel. Those present offered their versions of their involvement with Charnin and the artwork. None of them presented any evidence or arguments to rebut plaintiff's prima facie case of infringement.

A review of the transcript of the September 18 hearing, however, indicates that at no time did I announce that I intended to treat the proceeding as the final trial on the merits, or give any such indication. At the conclusion of the hearing, I stated that the question of preliminary injunctive relief against the additional defendants was *sub judice,* pending my examination of the moving papers. (Sept. 18 Tr. at 41). The hearing had the same informal character as the July 29 hearing; it in no way resembled a trial on the merits. Nor was the motion fashioned as a motion for summary judgment.

Finally, my written memorandum opinion and order of September 19, 1985 directing plaintiff to settle an order against the additional defendants contemplates "injunctive relief against [the additional] defendants comparable to that granted against the original defendants" in the August 2 order. There was no indication that consolidation should be ordered. I did not conduct a full hearing on the merits on September 18, 1985, and it would be inappropriate to now deem the liability issues fully tried. Therefore, plaintiff's motion to consolidate is denied. Because of my disposition on the consolidation issues, it follows that there has been no final adjudication on the issues of joint and several liabil-

---

16. Plaintiff's motion was filed September 13, 1985 and was titled "Motion for Preliminary Injunction against New Defendants & To Compel Compliance with Injunction Order of August 2, 1985 & For Consolidation of Hearing on this Motion with Trial on the Merits Pursuant to FRCP 65(a)(2)."

ity and the defendants' liabilities for costs and fees, and I do not reach those issues today.

I turn now to the contents of the order granting preliminary relief against the additional defendants. As stated in my Memorandum and Order dated September 15, 1985, I have found that a preliminary injunction should issue against the additional defendants in the same form as was issued against the original defendants. That preliminary relief included not only an injunction against further infringement, but also certain reporting requirements, including monthly reports until two years after issuance of final judgment detailing each defendant's manner of compliance with the preliminary injunction and setting forth the quantity, cost, and price of all copies of the infringing work they possessed or sold. It also required that they state the identity of any third parties who possess or sell the infringing work of whom each defendant has reason to be aware.

None of the additional defendants opposes the issuance of the injunction against further infringement. Some of the additional defendants, however, contend that the proposed reporting requirements are "out of touch with reality." They argue that they have already given the information regarding the cost, price, and quantity of the goods they bought from Charnin, and that since they have no records regarding the identity of their customers, this reporting requirement would be a "meaningless and burdensome task." They assert that they are not required to "police plaintiff's copyright," and that plaintiff can monitor their compliance with the preliminary injunction.

 I believe that in the circumstances of this case the proposed reporting requirements are reasonable and appropriate. The facts to date demonstrate that each additional defendant was selling the infringing work and continued to do so, at least briefly, after receiving a letter notifying them of plaintiff's copyright claim. The proposed order does not require the additional defendants to "police" plaintiff's

copyright; it seeks to assure the plaintiff and the Court that they will not resume infringing activities. There is no reason to put this burden again on plaintiff. If defendants are in compliance, come upon no new copies of the infringing work, and have no knowledge of third parties in possession of such goods, they need only so to aver.

These additional defendants also object to the requirement that they turn over any further inventory, as well as any materials that could be used to reproduce the infringing work. They maintain that they have already returned all copies of the poster to Charnin, and that they never had any production materials. Again, it is no great burden for them so to state under oath, and I believe on this record that plaintiff is entitled to these assurances.

Accordingly, the superseding order entered today against the original defendants will also extend to the additional defendants, with the exception of TTF Stationers, as to whom decision is reserved. See note 8 *supra*.

## V. *Summit's Motion for an Order of Judgment by Default Against Charnin or for a More Definite Statement*

Original defendant Summit filed its answer to the complaint and a cross-claim against Charnin on August 14, 1985. Service on Charnin was effected by mail on August 13, 1985, pursuant to Rule 5(b) of the Federal Rules of Civil Procedure. (See Certificate of Service of Bruce E. Lilling, appended to Summit's Answer and Cross Claim). The cross-claim seeks indemnification from Charnin to the extent Summit is found liable in damages to plaintiff, and holding Charnin liable for Summit's attorney's fees and costs. Summit has since settled with plaintiff.

ˍˍcording to Summit, Charnin called one of Summit's attorneys, Bruce Lilling, on September 4, 1985 regarding the cross-claim. Lilling told him that the cross-claim required an answer, that he should contact an attorney, and that he was already "tech-

nically in default" because his twenty days to respond had already expired.

In a letter by Charnin dated the next day, captioned "Answer to Cross Claim by Summit Cards Against Joseph Charnin," Charnin wrote to Lilling, "I absolutely refuse to pay you or your client, Summit Card Shop any money that you may have incurred as a result of a lawsuit by Update Art, Inc." Charnin goes on to state that Update Art had previously given free copies of the allegedly infringing work to a retailer who was not sued. He objected to the fact that Summit had come to a "private" settlement with Update Art in the face of Update Art's alleged willingness to supply copies of the artwork to other retailers who were marketing the allegedly infringing work.[17] Charnin's letter was postmarked September 6, 1985. The letter does not appear to have been filed with the Court. On September 18, 1985, another member of the law firm representing Summit, A. Kate Huffman, wrote to Charnin indicating that Charnin's letter was not a "proper response" to Summit's cross-claim. Charnin does not appear to have made any further response, and this motion—to which Charnin also has not responded—followed.

Summit argues first that Charnin has defaulted on its cross-claim because his letter fails to conform to the requirements for an answer in Rule 8(b) of the Federal Rules of Civil Procedure. Specifically, it contends that the letter neither contains a "plain" statement of Charnin's defenses to the cross-claim, nor admits or denies the allegations in the cross-claim. Fed.R.Civ.P. 8(b).

The pleading requirements of the Federal Rules of Civil Procedure are founded on the concept of "notice pleading." *See Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). They are to be construed so as "to do substantial justice," *id.* at 48; Fed.R.Civ.P. 8(f); their purpose is "to facilitate a proper decision on the merits." *Conley*, 355 U.S. at 48, 78 S.Ct. at 103. Thus, they are to be "judged by substance rather than form." *Mutual Creamery Insurance Co. v. Iowa National Mutual Insurance Co.*, 427 F.2d 504, 508 (8th Cir.1970); 2A Moore & Lucas, *Moore's Federal Practice* ¶ 8.34 (2d Ed. 1985). Papers filed *pro se*, in particular, must be read liberally. *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). An answer must only be sufficiently clear to afford plaintiff "fair notice" of what defenses are claimed. *Friedlander v. Cimino*, 520 F.2d 318, 320 (2d Cir.1975); *White v. Smith*, 91 F.R.D. 607, 608 (W.D.N.Y.1981).

Even governed by these standards, Charnin's letter cannot be said to fairly apprise Summit of what allegations in the cross-claim Charnin resists. Read most liberally, the letter suggests only possible defenses to Update Art's claims. Charnin's assertion that he intends to pay Summit no money and his objections to their "private" settlement with Update Art cannot be said fairly to apprise Summit of his basis for resisting the cross-claim. Indeed, the sub-

---

17. The contents of Charnin's letter read:

"Dear Mr. Lilling,

"Regarding our telephone conversation of this morning, please accept this as an *answer* to the cross-claim that you are making against me.

"I absolutely refuse to pay you or your client, Summit Card Shop any money that you may have incurred as a result of a lawsuit by Update Art Inc.

"I presented a copy of an invoice to Summit that shows that Update Art, gave absolutely *free*, 96 pieces of merchandise, to a card shop that was selling the exact same poster (N.Y.) that your client was selling. In addition, Update did not sue this store or even contend that the poster that I sold them was in any way, shape or form infriging [sic] on Update's copyright.

"Therefore how can you make a 'private' settlement with Update that sues your client, and at the same time gives away merchandise free to another store that is selling the exact same poster, that caused your client to be sued.

"In addition you made some excellent valid statements in your Notice of Motion and Motion, concerning the reasons why your client, Summit should not have to pay any damages to Update, but then you decide to drop the motion and make a 'private' agreement with Update.

Sincerely,
s/ Joseph Charnin
JOSEPH CHARNIN"

stance of the letter fails to address the indemnification issue at all.

However, I do not believe that Summit is thereby entitled to an entry of default against Charnin. Here, Charnin has served an answer to the cross-claim; but that answer failed to respond to its allegations. Rule 8(d) of the Federal Rules of Civil Procedure provides "[a]verments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleading." Rather than considering Charnin's answer a default, I believe it more appropriate to consider the allegations in the cross-claim admitted by the letter-answer. Charnin, who is now represented by counsel, may move within twenty (20) days from the date of this Memorandum Opinion and Order for leave to file an amended answer if so advised. *See Holmes v. Goldin,* 615 F.2d 83, 85 (2d Cir.1980) (reversing dismissal of *pro se* complaint for failure to state a claim and directing district court to appoint counsel and permit plaintiff to amend complaint).

 Summit also argues that Charnin should be held to have defaulted on the cross-claim because he failed to answer within twenty days, *see* Fed.R.Civ.P. 12(a). However, the cross-claim was served upon Charnin by mail. He therefore had an additional three days from the date the cross-claim was mailed to answer. Fed.R. Civ.P. 6(e).

 Summit's cross-claim was mailed on August 13, 1985. Charnin's letter was dated September 5, 1985—the twenty-third day. Since it was not postmarked until September 6, 1985, and since service is only effective upon mailing, Fed.R.Civ.P. 5(b), I cannot be certain whether Charnin's answer was technically timely. However, Summit has suggested no reason to believe the letter was not mailed on September 5, 1985. In any case, Charnin appears to have composed and mailed his written an-

swer as soon as he learned of the requirement. I do not believe in these circumstances that he should be held to have defaulted. *See Traguth, supra,* 710 F.2d at 95.[18]

## V. *Conclusion*

To summarize:

The motion by defendants Kitty Cards, Ahn's Card Shop, Oomi, and Commuter for an enlargement of time to answer is granted, *nunc pro tunc,* and their answers, already filed, will be deemed timely filed. Defendant New Wave's request for an enlargement of time to answer is granted, *nunc pro tunc;* New Wave may serve and file its answer no later than twenty (20) days from the date of this Memorandum Opinion and Order.

The motions by Charnin, Kitty Cards, and New Wave to vacate the August 2 order insofar as it ordered the consolidation of the hearing on the merits with the preliminary injunction hearing is granted. The August 2 order is vacated and a superseding order consistent with this opinion will be entered concurrently. The superseding order will also extend to the additional defendants, except defendant TTF Stationery, as to whom decision will be reserved until such date as plaintiff applies for the preliminary injunction motion against TTF to be heard.

Summit's motion for an entry of default against Charnin on its cross-claim or, in the alternative, for a more definite statement, is denied. Charnin may move for leave to file an amended answer, if so advised, within twenty (20) days of the filing of this Memorandum Opinion and Order, failing which the allegations in Summit's cross-claim will be deemed admitted.

The instant action is respectfully referred to the Hon. Naomi Buchwald, United States Magistrate, for a settlement con-

---

**18.** Summit moves in the alternative for a more definite statement from Charnin pursuant to Rule 12(e) of the Federal Rules of Civil Procedure. However, Rule 12(e) permits such a motion only in response to "a pleading to which a responsive pleading is permitted." No responsive pleading is permitted to an answer to a cross-claim. Fed.R.Civ.P. 7(a). Accordingly, Summit's motion for a more definite statement is denied.

ference and for supervision of pretrial discovery.

It is SO ORDERED.