ONAN CORPORATION, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 4–79–423.

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 24, 1979.

---

**430**

Peter Dorsey, Dorsey, Windhorst, Hanna-ford, Whitney & Halladay, Minneapolis, Minn., for plaintiff.

Thorwald H. Anderson, Jr., U. S. Atty., Stephen G. Palmer, Asst. U. S. Atty., Minneapolis, Minn., for defendant.

### MEMORANDUM

DEVITT, Chief Judge.

Plaintiff by this action attacks the policies and practices of the Department of Defense in limiting certain types of contract bids solely to small businesses, referred to as small business set aside procurements. Plaintiff is particularly concerned with a proposed procurement by the Department of Army of 136 electrical gen-erators, which has been set aside exclusively for small business bidding. This motion by plaintiff is for a temporary restraining order enjoining the Department of Army from awarding the generator contract on a small business set aside basis. The requested TRO would be for approximately a three week period, at which time a preliminary injunction motion would be made. Plaintiff also moves for expedited discovery prior to the preliminary injunction hearing, so it can better present its factual case to the court. The motion for a temporary restraining order is denied, but plaintiff is granted limited expedited discovery.

### FACTS

Plaintiff, Onan Corporation, apparently specializes in the design and manufacture of electrical and mechanical power generation systems. A significant portion of its business is from government contracts. Onan over the last thirty years has been a principal supplier of electrical generator systems to the Department of Defense. These systems, as described by plaintiff, are vital to the national defense because they provide the power sources for a modern, mobile defense force.

In July of 1979 the Department of Army requested sealed bids for 5 and 10 KW mobile electric generator sets. The estimated value of this procurement is from $14 million to $78 million, depending upon the quantities ultimately ordered and the options selected by the Army. Apparently this bid is the first of anticipated annual contracts that eventually will result in purchase of approximately 3300 generators, and the company awarded the first bid would have a distinct advantage in obtaining the contracts for successive years. See Affidavit of Clifford Nelson, Tab 8.

Before requesting bids the procurement officer responsible for acquiring the generators, Clifford L. Nelson, determined that this procurement was a proper one for the small business total set aside program, and he limited bids accordingly. As a consequence, Onan, which in not a small business, has been precluded from bidding for this procurement.

Authorization for small business set asides is found in the Armed Services Procurement Act and regulations promulgated thereunder. The Act provides generally that "It is the policy of Congress that a fair proportion of the purchases and contracts made under this chapter be placed with small business concerns." 10 U.S.C. § 2301 (1976). The regulations are designed to implement this general policy. See 32 C.F.R. §§ 1–701.1 to 1–707.7. These regulations provide in part that:

> [T]he entire amount of an individual procurement or a class of procurements . . shall be set aside for exclusive small business participation if the contracting officer determines that there is reasonable expectation that offers will be obtained from a sufficient number of responsible small business concerns so that awards will be made at reasonable prices. Total set-asides shall not be made unless such a reasonable expectation exists.

32 C.F.R. § 1–706.5(a)(1).

Plaintiff does not contest the legality either of the Act or the regulation. Rather, Onan alleges that the Department of Army does not follow the required procedures when it makes the small business set aside determination. In particular Onan argues that no determination normally is made as to whether the expected small business bidders are "responsible," but rather a small business set aside is made whenever two or more small businesses indicate a desire to bid, regardless of whether they are "responsible" small businesses.

The evidence submitted by plaintiff is primarily based on "information and belief." However, Onan does point to past instances where set asides to small businesses have resulted in apparently less than adequate performances by the small businesses that obtained the contracts. Plaintiff also claims the particular small businesses that are bidding on the 136 generators do not have the resources to complete the contract adequately and therefore are not responsible bidders. Finally, Onan alleges it was told by a representative of the Department of Army, Dr. Thomas Keenan, that because at least two small business concerns could be expected to bid for the generator contract the Army was required to request bids on a small business set aside basis. (Affidavit of R. E. O'Leary, at p. 3). Onan recognizes its factual position is somewhat speculative but argues it is sufficient for a temporary restraining order, and that with expedited discovery a more concrete factual picture can be presented at the preliminary injunction hearing.

Defendant has submitted affidavit and documentary evidence to rebut Onan's allegations. For example, the contracting officer, Clifford Nelson, testifies by affidavit that he considered closely the likelihood bids would "be obtained from a sufficient number of responsible small business concerns so that awards will be made at reasonable prices." He determined that at least two responsible small businesses with successful track records, Libby Welding Co. and John R. Hollingsworth Co., could be expected to bid. Those companies in fact did submit what Nelson believes are competitive bids, and two other small businesses submitted bids. Mr. Nelson's affidavit also has attached documents which tend to substantiate defendant's position that the relevant regulations were complied with.

Other affidavits submitted by the government verify Mr. Nelson's testimony. Those affidavits also provide additional information relevant to this motion. The affidavit of Dr. Keenan refutes plaintiff's allegation that he told plaintiff the Army awards procurements on a set aside basis whenever small businesses are likely to bid, regardless of whether those businesses are "responsible." Dale Watson's affidavit indicates that if Onan's TRO request is granted, the Army's appropriation for the generator sets will be lost and a new appropriation would have to be requested. Also, Mr. Watson informs the court that if the present bidding process is cancelled a six month delay would result and the delay would cause a ten to twelve percent price increase. Finally, the affidavit of Harold Strickfaden states the generators are urgently required

by the Army, and shortages of the generators "are having significant impact on our readiness position, especially in Europe for U.S. and NATO forces." These individuals all appear to be in a position to comment on the matters addressed in their respective affidavits.

## DISCUSSION

Before analyzing plaintiff's TRO request, the court must address some preliminary issues raised by the government concerning standing, jurisdiction, and failure to join indispensable parties.

■ The standing argument is that plaintiff is without standing to attack the procurement process at issue. In brief, defendant argues that the small business set aside program is for the benefit of small businesses and therefore plaintiff, not being a small business, has no standing. This argument appears to be without merit. To have standing plaintiff must suffer an injury in fact and the interest sought to be protected must be within the "zone of interests" protected or regulated by the statute in question. *See, e. g., Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 152–53, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Plaintiff certainly has suffered injury in fact—it has been precluded from bidding for a valuable public contract. *See, e. g., Scanwell Laboratories, Inc. v. Shaffer,* 137 U.S.App.D.C. 371, 424 F.2d 859 (1970). Furthermore, plaintiff appears to satisfy the "zone of interest" test, because the Administrative Procedures Act entitles plaintiff to judicial review of the Army's decision to procure the generators on a set aside basis and because the Armed Services Procurement Act, which plaintiff claims was violated in this case, regulates who must be allowed to bid for contracts such as the one at issue; thus these statutes appear to regulate the interests plaintiff seeks to have protected. *Compare FCC v. Sanders Bros. Radio Station,* 309 U.S. 470, 473–77, 60 S.Ct. 294, 84 L.Ed. 460 (1940). *See generally* L. Tribe, *American Constitutional Law* § 3–26 (1978).

■ Defendant also argues that this court lacks jurisdiction. The rationale for this argument is not clear to the court. Section 1331(a) of Title 28 grants district courts jurisdiction of all civil actions arising under the laws of the United States, and provides further that the $10,000 amount in controversy requirement does not apply to actions "against the United States, any agency thereof, or any officer or employee thereof in his official capacity." The Supreme Court has made clear that § 1331(a) "confer[s] jurisdiction on federal courts to review agency action." *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). Thus, defendant's jurisdictional argument is without merit.

■ Defendant raises an additional issue with respect to failure to join a party required to be joined under Fed.R.Civ.P. 19(b). Defendant argues that, because plaintiff has claimed the small businesses that bid for the electrical generator are not "responsible," those small businesses must be joined or this action dismissed. Again, the logic of defendant's position is not easy to perceive. Those businesses do have a stake in the outcome of this proceeding, but their presence here is not necessary for a just and complete adjudication of the issues raised by plaintiff. The procurement contract has not yet been awarded, so none of the small businesses has a contract right that would be affected, nor does the government face a significant risk of double liability and inconsistent judicial rulings. The issue here—the propriety of the set aside decision—can be determined with the parties presently before the court and therefore the joinder principles of Rule 19 have not been violated. *Compare, e.g., Wright Farms Constr., Inc. v. Kreps,* 444 F.Supp. 1023, 1028–29 (D.Vt.1977). *See generally* 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1602 (1972).

■ Turning to the merits of plaintiff's temporary restraining order motion, the court is of the view that the motion must be denied. Plaintiff has urged this court to apply the standard for preliminary

injunctive relief[1] adopted by the Eighth Circuit in *Fennell v. Butler*, 570 F.2d 263 (8th Cir. 1974). That standard requires sufficiently serious questions going to the merits to make the case a fair one for litigation, and a balance of hardships that tips decidedly in favor of the plaintiff. *Id.* at 264. This standard, however, does not appear to be appropriate in government procurement cases, especially when military procurements are at issue.

Cases involving disputes over government procurement contracts almost invariably emphasize that the courts should be extremely reticent to interfere with government procurement policies, given the complexity of procurement decisions, the lack of expertise possessed by the courts, the discretion invested in the procurement officer, and the potential confusion, inefficiency, delay, and increased expense that can result. *See, e. g., Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260 (5th Cir. 1978); *Hayes International Corp. v. McLucas*, 509 F.2d 247, 257 n.13 (5th Cir. 1975). The reticence of the court is further heightened when it is asked to enjoin the procurement of items vital to the national defense. *Id.* at 257.

The cautionary concerns expressed above require the court to view a request for preliminary injunctive relief in a manner different than a more typical preliminary injunction or TRO motion. The court in *Hayes, supra,* relying on well-developed case law from the District of Columbia Circuit, summarized some of the factors to be considered in this type of motion:

Among the various factors which have been expressly recognized as proper to take into account in determining whether an injunction should issue are: (1) the importance to national defense of the item to be procured; (2) the availability of alternative remedies, either in the Court of Claims or a bid protest claim to the General Accounting Office; and (3) the substantial likelihood that statutory standards were in fact violated. Further the plaintiff has been held to bear a heavy burden of proving that a procurement officer's decision was genuinely arbitrary and unreasonable.

509 F.2d at 258.

In light of the above principles it is clear that a temporary restraining order should not issue. Plaintiff has not established or even created a reasonable inference that the statutes and regulations concerning small business set asides were violated. The most that can be inferred is that there is a legitimate difference of opinion between Onan and Army procurement personnel on whether the contract for electrical generators can be performed by a small business. Absent violation of agency procedures or arbitrary decision-making, and there appears to be none in this case, this is just the type of dispute the court should avoid becoming enmeshed in. Therefore, from the evidence now before the court, it is apparent that plaintiff's legal position is weak.

Other reasons suggest themselves for denying the TRO request. In plaintiff's own account of the facts it is stated that the electrical generators at issue are vital to the national defense, and the government's affidavits confirm this. And it appears that a TRO of even ten days' duration would result in loss of the appropriation for the generators, necessitating a new appropriation and causing at least a six month delay

---

1. Normally at the temporary restraining order stage the court does not apply preliminary injunction standards. Rather the court is concerned primarily with the need to maintain the status quo for the short period until the preliminary injunction hearing, at which time the matter can be more fully briefed and presented by the parties and more carefully considered by the court. Consequently, the inquiry centers on the balance of hardships and the probable irreparable harm that might result if the TRO is granted or denied. *See, e. g., Squillacote v.*

*Local 248, Meat & Allied Food Workers,* 534 F.2d 735, 742–43 (7th Cir. 1976); *Pan American World Airways, Inc. v. Flight Engineers Ass'n,* 306 F.2d 840, 842–43 (2d Cir. 1962). However, where, as in this case, the merits have been thoroughly briefed by the parties and considered by the court, it is appropriate to consider the merits of plaintiff's claims as well as the relative hardships and irreparable harm in deciding whether the extraordinary temporary restraining order remedy is warranted.

in the procurement of these admittedly vital generators. Therefore, while it is true that plaintiff may suffer irreparable harm if the TRO does not issue, *see, e. g., John W. Danforth Co. v. Veterans Administration,* 461 F.Supp. 1062, 1072 (W.D.N.Y. 1978), it is also apparent that the granting of a TRO might have a significant disruptive effect on the Army's procurement of the generators and, conceivably, on the national defense. Thus, absent a significantly stronger showing that the Army has acted in violation of its regulations, plaintiff's motion must be denied.

The court also wishes to alert the parties to its thinking concerning the doctrine of primary jurisdiction. The area of government procurement practices and policies is extremely complex, and there is a process whereby allegedly aggrieved bidders can appeal to the General Accounting Office. That Office has developed significant expertise in this area and as a result the court could obtain valuable assistance and guidance from that agency in determining the validity of plaintiff's allegations. Consequently, it may be appropriate to invoke the doctrine of primary jurisdiction and require plaintiff to proceed first through the appeal process with the GAO before this court renders a final judgment as to the merits of plaintiff's claims. As the District of Columbia Circuit stated in a similar case, *Wheelabrator Corp. v. Chafee,* 147 U.S.App. D.C. 238, 248, 455 F.2d 1306, 1316 (1972):

> Under the doctrine of primary jurisdiction, a court may entertain an action for permanent relief and defer its consideration of the merits until an agency "with special competence" in the field has ruled on the issues, if necessary maintaining the status quo pendente lite with injunctive relief avoiding irreparable injury pending such agency consideration. This doctrine has application to the General Accounting Office even assuming its function is advisory since it has the special competence and experience that is the life and reason of the primary jurisdiction rule.

*Accord, e. g., City of Los Angeles v. Adams,* 181 U.S.App.D.C. 163, 174, 556 F.2d 40, 51 (1977); *Foremost International Tours, Inc.*

*v. Qantas Airways, Ltd.,* 525 F.2d 281, 286–87 (9th Cir. 1975). As the above quote indicates, invoking the primary jurisdiction doctrine does not preclude the court from ruling on a TRO or preliminary injunction motion. Plaintiff therefore is free to seek a preliminary injunction from this court. However, after any such motion is ruled upon the court is inclined to invoke the primary jurisdiction doctrine, and the parties may wish to brief the court as to the wisdom of that inclination.

Finally, the court grants plaintiff's motion for limited discovery to prepare for a possible preliminary injunction motion. The extent of discovery that is being requested is not entirely clear from plaintiff's moving papers. Depositions of the contracting officer, Clifford Nelson, and Dr. Keenan, would be appropriate if limited to whether the particular contract at issue was properly set aside solely for small business bidding. Also, some limited document production on this issue should be permitted.

If the plaintiff deems further depositions necessary, or if the parties cannot agree on the scope of discovery as to documents, motions can be made to the magistrate accordingly.

Plaintiff's motion for a temporary restraining order is DENIED and its motion for limited expedited discovery is GRANTED.