**NORDICTRACK, INC., a Minnesota corporation, Plaintiff,**

v.

**CONSUMER DIRECT, INC., Gut Buster Corporation, f/k/a Fitness Quest, Inc., an Ohio Corporation, and Richard A. Suarez, Defendants.**

**Civ. No. 4–91–429.**

United States District Court,
D. Minnesota,
Fourth Division.

July 5, 1994.

Charles D. Reite, Minneapolis, MN, and Thomas L. Skorczeski, St. Paul, MN, for plaintiff.

John M. Mason and J. Thomas Vitt, Minneapolis, MN, for defendants.

## ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge, pursuant to the consent of the parties as authorized by Title 28 U.S.C. § 636(c)(3), upon a variety of Motions in Limine by both the Plaintiffs and the Defendants.

A Hearing on the Motions was conducted on February 1, 1994, at which time the Plaintiff appeared by Charles D. Reite and Thomas L. Skorczeski, Esqs., and the Defendants appeared by John M. Mason and J. Thomas Vitt, Esqs.[1]

For reasons which follow, the Motions of the parties are granted in part and denied in part.

### II. *Factual and Procedural Background*

This action was commenced on June 5, 1991, in order to contest a number of assertedly false and misleading advertisements that had been publicized by the Defendants in the marketing of its "Fit One" exercise machine and which, purportedly, violated the provisions of the Lanham Act, *Title 15 U.S.C. § 1125(a).* The Plaintiff also has alleged, as

---

1. In view of the filing of a Chapter 11 Petition by the Defendant Consumer Direct, Inc. ("CDI"), and the resultant potentiality that the resolution of the issues before the Court had been mooted, our determination of the issues was deferred pending additional argument and briefing by the parties on the impact of the automatic stay provisions of Title 11 U.S.C. § 362. The issue has now been fully briefed, and we are satisfied that, barring the Bankruptcy Court's grant of CDI's Motion to stay these proceedings as to the Defendant Richard A. Suarez, this matter should proceed to the previously established trial date of July 19, 1994. In this respect, we understand that the Defendants continue to urge that the trial of this matter be postponed for a period of 6 months.

supplemental claims of liability, violations of the Minnesota Uniform Deceptive Trade Practices Act, *Minn.Stat. §§ 325D.43–48,* of the Minnesota Consumer Fraud Act, *Minn. Stat. § 325F.67,* and of the Minnesota common law of unfair competition.

By its Complaint, the Plaintiff seeks preliminary and permanent injunctive relief against the Defendants, which would prevent them from continuing their allegedly false advertising campaign, and which would obligate them to publish corrective advertising so as "to repair the damage to Plaintiff," *Complaint,* at 15, together with an accounting for damages, and a declaration that the Defendants' actions were willful, thereby warranting an award of attorneys' fees. *Id.* at 16.[2]

On June 11, 1991, the Plaintiff moved for a Temporary Restraining Order ("TRO"), in order to enjoin the Defendants from publishing or disseminating any more false or deceptive advertising. On June 17, 1991, United States Magistrate Judge Franklin L. Noel recommended that the TRO be granted. The Defendants filed Objections to the issuance of a TRO, as had been recommended by the Magistrate Judge, and requested expedited discovery and a Hearing on the Plaintiff's requested preliminary injunction.

On June 26, 1991, the District Court, the Honorable Harry H. MacLaughlin presiding, conducted a Hearing on the Defendants' Objections. On that same date, the Court issued an Order which rejected the Recommendation of the Magistrate Judge[3] and which denied the Motion for a TRO. The Court also advised that a Hearing on the requested Preliminary Injunction would be subsequently scheduled.

On September 9, 1991, the Plaintiff filed a Motion for a Preliminary Injunction, which sought identical relief to that which had been pursued in the Motion for a TRO. On October 1 through 3 of 1991, an Injunction Hearing was held before the District Court, at which time the Court consolidated the Injunction Hearing with the trial on the merits of those issues then in contest. The scope of the Injunction Hearing—particularly whether the conduct of that Hearing should preclude the Plaintiff's pursuit of those claims which were, or which could have been, litigated at the time of that Hearing—is currently in dispute.

On October 18, 1991, the Court made oral Findings of Fact and announced its Order which, in part, "preliminarily and permanently enjoined" the Defendants from comparing the Fit One model to the NordicTrack Pro model without inclusion of a footnote in future written advertisements that would inform consumers that NordicTrack models, other than the Pro model, were available at lower prices.[4] The Plaintiff had argued, and the District Court agreed, that the Defendants' advertisements unfairly portrayed the pricing of NordicTrack exercise machines.

On June 11, 1992, Magistrate Judge Noel issued a Pretrial Schedule which directed that discovery would conclude on March 1, 1993, that all dispositive Motions should be filed before May 1, 1993, and that the case would be ready for trial by no earlier than July 1, 1993.

On November 10, 1992, the Plaintiff filed Motions for Summary Judgment and for Damages, and to Dismiss the Defendants' Counterclaim. On that same date, the Defendants filed a Motion for Partial Summary Judgment, which sought a permanent injunction that would enjoin the Plaintiff from making the following advertising claims:

2. As part of their Answer dated June 20, 1991, the Defendants filed a Counterclaim which asserts that the Plaintiff is also liable under the Lanham Act, as well as the Minnesota Statutes identified in the Plaintiff's Complaint, for the false and misleading nature of its own advertising. Like the Plaintiff, the Defendants seek injunctive relief as well as damages.

3. In rejecting the analysis of the Magistrate Judge, the District Court concluded that the Magistrate Judge had erroneously applied the analytical factors of *Dataphase Systems, Inc. v. CL Systems, Inc.,* 640 F.2d 109 (8th Cir.1981), which are appropriate to the consideration of a Preliminary Injunction but not a TRO. *Onan Corp. v. United States,* 476 F.Supp. 428, 433 n. 1 (D.Minn.1979).

4. On March 2, 1993, the Court modified its Injunction to clarify how the disclaimers should appear in multiple-page, printed advertisements.

1) That 7 out of 10 NordicTrack owners continue to use their machines at least three times a week five years after purchase.

2) That 7 out of 10 NordicTrack owners use their machines more than three times a week five years after purchase.

3) That 69% or more of NordicTrack owners use their machines an average of 3.5 times a week with an average length of 25 minutes five years after purchase.

On March 2, 1993, the District Court denied the Plaintiff's Motion to Dismiss the Defendants' Counterclaim, rejecting the Plaintiff's defenses of unclean hands and *in pari delicto,* as well as its theory that any alleged false claims of NordicTrack would accrue to the Defendants' benefit due to their comparison advertising. The Court also granted the Defendants' Motion for Partial Summary Judgment on their Counterclaim. Finally, the Court denied the Plaintiff's Motion for Damages, holding that, although the Plaintiff was entitled to some award of damages, it had not yet developed a sufficient factual record that would permit an entry of a damage award.

On June 17, 1993, Magistrate Judge Noel issued an Order which resolved the remainder of the pending pretrial disputes. The Magistrate Judge granted the Plaintiff's Motion for supplementation of the pleadings, and allowed the Plaintiff to seek further injunctive relief by alleging continued violations of the Lanham Act in printed advertisements and an infomercial [5] which the Defendants had circulated after the Court's Injunction of October 18, 1991. Magistrate Judge Noel also granted several of the Plaintiff's Motions to compel discovery, including discovery that was relevant to the Plaintiff's supplemental claims.[6] Finally, the Magistrate Judge denied the Plaintiff's Motion for a Protective Order, which would have shielded the contents of the Plaintiff's annual business plans and weekly media reports, and

granted the Defendants' Motion to compel the production of these documents, to compel the production of documents related to the Plaintiff's continued use claims, and to supplement earlier discovery requests.

Currently pending before the Court are the following Motions:

1. The Plaintiff's Motion to extend discovery for the purpose of deposing certain witnesses that have been newly-identified by the Defendants.

2. The Plaintiff's Motion for a Rule 26(c) Protective Order which would foreclose counsel for the Defendants from representing another, but different, competitor of NordicTrack.

3. The Plaintiff's Motion for supplementation of its pleadings.

4. The Plaintiff's Motion for a Rule 39(c) Advisory Jury.

5. The Defendants' Motion to prohibit the Plaintiff from introducing evidence of, or from making a claim for damages.

6. The Defendants' Motion to prohibit the Plaintiff from introducing evidence of, or of making reference to the Defendants' "calorie-burn" and "weight loss" claims.

7. The Defendants' Motion to compel production of NordicTrack's business plans and to enforce Magistrate Judge Noel's Order of June 17, 1993.

We address each of these Motions, in turn.

### III. *Discussion*

A. *The Plaintiff's Motion to Extend Discovery for the Purpose of Deposing Certain Witnesses Newly–Identified by Defendants.*

As a result of the District Court's Order of July 12, 1993, which reopened discovery until July 19, 1993, the Plaintiff was entitled to engage in limited discovery which would relate to its supplemental claims that arose out of the Defendants' "Knowing the Score" in-

---

**5.** The Plaintiff's request to supplement their Complaint centered around the "Knowing the Score" infomercial broadcast in the Defendants' advertising campaign that was launched in late 1992, that featured nationally-known quarterback Joe Montana, and his wife Jennifer, and that promoted the Defendants' Fit One product.

**6.** On July 12, 1993, the District Court affirmed the Magistrate Judge's Order of June 17, 1993, and extended the time, in which the Plaintiff could conduct discovery, to July 19, 1993.

fomercial. According to the Plaintiff's counsel, prior to a scheduled trip to Cleveland, Ohio, in order to depose Barry Sabol,[7] he requested of the Defendants' counsel, on July 14, 1993, to disclose the identities of those individuals who were depicted in the infomercial to awkwardly operate the NordicTrack equipment. As the Plaintiff's counsel relates, it was his intention to take the depositions of those individuals while he was in the State of Ohio in order to determine if they were, genuinely, participants in the Defendants' survey, or were paid performers. Notwithstanding that request, the Plaintiff's counsel advises that the names of these individuals were not provided until July 16, 1993, following his return to Minnesota and at a point at which it was too late to notice the depositions and to complete his discovery by July 19, 1993.

In support of its Motion to Extend Discovery, the Plaintiff maintains that good cause exists in light of the Defendants' delays, and by virtue of the deposition testimony of Sabol that none of the participants in the Defendants' consumer preference survey had been filmed exercising on NordicTrack's equipment. As a consequence of this testimony, the Plaintiff argues that the individuals filmed in the infomercial had been coached to trip and stumble on the NordicTrack equipment so as to disparage its usefulness, if not its accessibility, in the eyes of the consuming public.

■ In opposition to the Motion, the Defendants contend that the Plaintiff waived its opportunity to conduct additional discovery by not noticing the depositions or giving "any hint that it wanted these additional depositions until the discovery period was over." *Memorandum*, at 2. We find this argument unconvincing. It is clear from the record before us that the Plaintiff attempted to learn the names of the individuals, who were involved in the infomercial, in its requests for the Defendants' supplementation of their responses to the Plaintiff's Fourth Set of Written Interrogatories. Nevertheless, the Defendants resisted these requests until the proverbial last hour, and then responded only after discovery had been compelled by Magistrate Judge Noel and that discovery Order had withstood the Defendants' challenge on appeal to the District Court. We find it inappropriate to punish the Plaintiff for failing to notice depositions, prior to the expiration of the one-week period in which discovery had been reopened, when the identities of the persons to be deposed were not disclosed until the waning hours of discovery.

In so concluding, we have not overlooked the Defendants' claim that any delay in discovery was solely attributable to the Plaintiff. Offering the Affidavit of CDI representative Judy Traugh ("Traugh"), the Defendants assert that, while the Plaintiff's counsel was in Cleveland, Traugh offered to personally deliver the requested identities, but that Plaintiff's counsel declined, and directed Traugh to serve the discovery responses in the usual manner. The Plaintiff contests the accuracy of Traugh's Affidavit but, notwithstanding the differing contentions of the parties, we do not find the claimed availability of the discovery responses to be dispositive of the issue before us. Even if the Defendant had informally accepted the names of the participants in the infomercial on July 14, 1993—when counsel was physically in Ohio—we would extend discovery in order that depositions could be properly noticed and taken.

Accordingly, the Plaintiff's Motion to Extend Discovery will be granted, and discovery for the purposes of noticing the depositions of the individuals listed in the Defendants' supplemental discovery responses, which were served on July 16, 1993, will be extended for a period of ten days following the date of this Order.[8]

---

7. Sabol has been identified as the individual who had conducted a product preference survey which, ostensibly, was relied upon by the Defendants in producing their "Knowing the Score" infomercial which, according to the Plaintiff's supplemental claims, was both false and misleading.

8. We do not suggest that depositions of the various participants in the infomercial need be taken. If the parties are in mutual agreement, the same discovery could be obviated by a stipulation, admissions, or the like. In the absence of a stipulated agreement, the depositions should proceed within the allotted time period.

**B.** *The Plaintiff's Motion for a Rule 26(c) Protective Order Foreclosing Counsel for the Defendants from Representing Another NordicTrack Competitor.*

At the time that this Motion was filed, counsel for the Defendants also represented Soloflex, Inc., as a defendant in another proceeding that was pending within this District. See, *NordicTrack, Inc. v. Soloflex, Inc.*, Civ. No. 4–93–556. The Plaintiff asserts that, because the Defendants' representation of Soloflex potentially undermines the prophylactic effect of the Court's Protective Order of September 23, 1991,[9] the Court should issue a supplementary Protective Order which would disqualify defense counsel from contemporaneously representing Soloflex.[10]

■ Given the record before us, we find a disqualification of defense counsel, from representing a competitor of NordicTrack to be wholly unwarranted. As defense counsel have advised, without contradiction from the Plaintiff, following the filing of this Motion, the matter of *NordicTrack, Inc. v. Soloflex, Inc.* was transferred to the United States District Court for the District of Oregon, and defense counsel ended their representation of Soloflex which, previously, had solely been limited to the role of local counsel. Thus, the Motion to Disqualify is moot.[11]

**C.** *The Plaintiff's Motion for Supplementation of Pleadings.*

On June 17, 1993, Magistrate Judge Noel allowed the Plaintiff to supplement its Complaint in order to seek relief from certain advertisements which the Defendants had published after the District Court's Injunction of October 18, 1991. As we have related, these supplemental claims pertained to the Defendants' use, in 1992, of the purported false and misleading "Knowing the Score" infomercial which featured Joe Montana, and which, in the Plaintiff's view, violated the Lanham Act as well as the Court's Injunction Order.

The Plaintiff's current Motion is similar to its previous request, except that now the Plaintiff seeks leave to supplement its Complaint in order to add claims, which are related to two further printed advertisements that were part of the "Knowing the Score" campaign, and about which the Plaintiff purports to have had no knowledge when bringing its previous Motion to Supplement. Once again, the Plaintiff claims that the "Knowing the Score" printed advertisements are false and misleading in violation of the Lanham Act and in contravention to the Court's Injunction of October 18, 1991.

■ Of course, a decision to grant or to deny leave to file a supplemental pleading is left to the broad, but sound, discretion of the Trial Court. See, *Gillihan v. Shillinger*, 872 F.2d 935 (10th Cir.1989); *Keith v. Volpe*, 858

---

**9.** On this date, the parties stipulated to entry of a fourteen-page Protective Order, pursuant to Rule 26(c), Federal Rules of Civil Procedure, that resolved a host of confidentiality issues. In particular, counsel agreed to retain notes, exhibits and other documents which included confidential information (as defined and identified by counsel), and would not disclose that information to any person, including their clients, or use the information for any purpose other than in the current litigation.

**10.** In support of this Motion, the Plaintiff has proffered the Affidavit of its Vice President of Business Analysis and Strategic Planning, which avers that the Plaintiff's business plans, that have been produced in these proceedings, include sensitive marketing information which would be "greatly value[d]" by NordicTrack's competitors. *Affidavit*, at 2. While undoubtedly true, the Plaintiff offers nothing more than surmise to suggest that defense counsel would, intentionally

or inadvertently, violate an Order of this Court, and potentially subject themselves to the harsh sanctions which could follow.

**11.** Moreover, the Plaintiff has not presented us with any authority that would demark our authority to step beyond the confines of this dispute in order to disqualify counsel from representing another party before another Court. Rather, the Plaintiff merely contends that the Defendants are in violation of the "spirit" of the Court's Protective Order—not its actual prohibitions. In the absence of compelling need, we find it unwise to impose sanctions solely upon the Plaintiff's perceived "risk," that is not otherwise substantiated, that relevant information may be improperly disclosed. Cf., *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.*, 121 F.R.D. 264, 269 (M.D.N.C.1988) (sanctions inappropriate upon violation, at most, of spirit of protective order).

F.2d 467 (9th Cir.1988), cert. denied, 493 U.S. 813, 110 S.Ct. 61, 107 L.Ed.2d 28 (1989). Here, presumably due to the close similarity of issues between the "Knowing the Score" printed advertisements and the "Knowing the Score" infomercial, the Plaintiff has represented that the filing of the requested supplemental pleading will not require any further discovery, nor would it delay the trial of this matter. Compare, *Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329 (7th Cir.1985).

The Defendants, who rely upon largely distinguishable authority—in which the Court's analysis is driven by the potential delay in a trial caused by the adjudication of entirely new issues—have made no convincing showing of prejudice, surprise, or detriment to judicial economy, nor any undue delay, bad faith or dilatory motive on the part of the Plaintiff. Compare, *Societe Liz, S.A. v. Charles of the Ritz Group, Ltd.*, 118 F.R.D. 2 (D.D.C.1987). In light of our interest in the resolution of all of the claims that exist between these parties, see, *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1981), cert. denied, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1981), the Motion to Supplement will be granted.

### D. *The Plaintiff's Motion for a Rule 39(c) Advisory Jury.*

Although the Plaintiff concedes that the trial of this matter could be presented solely to the Court, it maintains that it is entitled to a Seventh Amendment Jury trial as to its legal remedies under the Lanham Act. Moreover, the Plaintiff contends that, under the doctrine of *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962),[12] the presence of equitable claims

should not preclude its right to a Jury trial, which was timely demanded in its Complaint of June 5, 1991. In the alternative, the Plaintiff suggests that, should the Court entertain any doubt as to the propriety of a Jury trial, an advisory Jury should be impaneled pursuant to Rule 39(c), Federal Rules of Civil Procedure.[13]

In resolving the issue of whether to proceed before the Court, or with a Jury, the cases make clear that the allegations of the Plaintiff's Complaint are critical, particularly as the Complaint should allege that the Plaintiff has been damaged by the Defendants' conduct, and that an "accounting for damages" is being pursued, as is permitted for violations of the Lanham Act's prohibitions against false and misleading advertising.[14] See, *Title 15 U.S.C. § 1117* (entitling plaintiff to a recovery of damages, the defendants' profits, and costs of action upon proving violation of Title 15 U.S.C. § 1125(a)). Actions which pursue an accounting for damages under Section 1117, can be—under the ordinary application of the *Dairy Queen* principle—presented to a Jury. See, *Grove Fresh Distributors, Inc. v. New England Apple Products Company, Inc.*, 1991 WL 3928 (N.D.Ill.1991); *Oxford Industries, Inc. v. Hartmarx Corp.*, 1990 WL 65792, 15 U.S.P.Q.2d 1648 (N.D.Ill.1990); *Mastercard Intern., Inc. v. Arbel Corp.*, 1989 WL 125781 (S.D.N.Y.1989) (Court found "little merit with plaintiff's motion to strike defendant's jury demand"); *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 629 F.Supp. 644 (D.Me. 1986).

As a consequence of this authority, the Plaintiff's claims for damages warrant a Jury trial. These claims include the determination of the Plaintiff's damages, if any, which arise from the violations identified in

---

**12.** In *Dairy Queen,* the Supreme Court concluded that where a single case presents both legal and equitable claims, and a trial by Jury is timely and properly demanded, the legal issues must be submitted to a Jury before the equitable issues are decided. *Dairy Queen, Inc. v. Wood,* supra at 470–73, 82 S.Ct. at 896–97. In this respect, the Court noted that "insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal." *Id.* at 476, 82 S.Ct. at 899.

**13.** Although they take no position on the presence of an advisory Jury, the Defendants do maintain that all issues should be tried before the Court.

**14.** As here pertinent, the Plaintiff's Complaint alleges that it expended over $2 million in corrective advertising, and that it has suffered over $12 million in lost revenues, as a result of the Defendants' misleading and false advertising.

the Court's Order of October 18, 1991, as well as any damages which resulted from such other violations as may be found upon the trial of this matter. Accordingly, the Plaintiff's Motion for a Rule 39(c) Advisory Jury is denied as moot.[15]

E. *The Defendants' Motions in Limine.*

1. *Motion to Prohibit the Plaintiff from Introducing Evidence of or Making a Claim for Damages.*

■ In support of their Motion, the Defendants offer two basic arguments. First, the Defendants request this Court to disallow any claim for damages that the Plaintiff may have as a sanction for discovery abuses pursuant to Rule 37(b)(2), Federal Rules of Civil Procedure, or as an act of discretion under the "equities of the case" which, the Defendants claim, is a proper exercise of our authority under the Lanham Act. We find no arguable basis to regard these contentions as meritorious and, therefore, we proceed with the Defendants' remaining argument.

The Defendants claim that "it is impossible to prepare to defend against a claim when the other side won't tell you what it is." *Memorandum,* at 5. However, the Plaintiff submitted supplemental responses to the Defendants' Second Counterclaim Interrogatories on July 6, 1993, which outlined its damages which are claimed to have resulted from the Defendants' actions and the Plaintiff's

curative measures including the costs that were incurred through corrective advertising, an overall reduction in revenues, and a decrease in the price of NordicTrack orders. These disclosures have been in the Defendants' possession for nearly one year, mooting their claim of prejudice in preparing a defense, see generally, *Avionic Company v. General Dynamics Corp.,* 957 F.2d 555, 558 (8th Cir.1992); *Shelton v. American Motors Corp.,* 805 F.2d 1323, 1330 (8th Cir.1986), simply by reason of the passage of time. Moreover, although the Defendants have shown some delay and frustration in securing the Plaintiff's complete discovery responses, they have failed to demonstrate that the Plaintiff had a willful disregard for its obligations under the rules of discovery. As a result, our considerations of what is "just" under Rule 37(b)(2), Federal Rules of Civil Procedure, as well as our balancing of the "equities of the case" under the Lanham Act, do not favor the entry of the sanction that the Defendants request.[16]

2. *Motion to Prohibit the Plaintiff from Introducing Evidence of or Making Any Reference to its "Calorie–Burn" and "Weight Loss" Claims.*

The Defendant argues that the approaching trial of this matter should not include, as the Plaintiff currently intends, the resolution of the claims that have been identified in Paragraph 15(c) of its Complaint as follows:

15. Of course, all equitable issues are to be preserved for the Court's resolution after the legal issues are resolved by the Jury. We note that the Plaintiff also seeks further injunctive and declaratory relief, as well as a disgorgement of the Defendants' profits. Whether the disgorgement of profits—which, it may be argued, is a claim for restitution and unjust enrichment—is a legal or equitable issue is unclear, see, *Esercizio v. Roberts,* 944 F.2d 1235, 1248 (6th Cir.1991), cert. denied, —— U.S. ——, 112 S.Ct. 3028, 120 L.Ed.2d 899 (1992); *American Cyanamid Co. v. Sterling Drug, Inc.,* 649 F.Supp. 784, 789 (D.N.J. 1986); but see, *Oxford Industries, Inc. v. Hartmarx Corporation,* 1990 WL 65792, 15 U.S.P.Q.2d 1648 (N.D.Ill.1990), and need not be resolved at this juncture.

16. While the Defendants generally argue that the exclusion of the Plaintiff's damage claims should be ordered as an appropriate sanction, they also argue as follows:

We pointed out that the evidence conclusively proved that NordicTrack had not suffered any

actual damages. NordicTrack's sales have skyrocketed during the time period it claims to have been damaged, increasing from $85 million in 1990 (before CDI began advertising its Fit One skier) to $135 million in 1991, and it was operating at full capacity during the relevant time period.

We note that the Plaintiff's allegations of lost profits also center around the alleged decrease in price per order of NordicTrack exercisers, such that even if it were operating at full capacity, it arguably was producing lower profit-margin equipment during the relevant periods as a result of the Defendants' actions. Moreover, the Plaintiff intends to prove damages through its costs of corrective advertising. At this stage, these claims appear to be uniquely issues of fact which will be contested at trial. To the extent that the Defendants' argument may be read as a Motion for the Entry of Judgment as a matter of law, we merely observe that nothing voiced here diminishes the Defendants' right to renew its Motion during the course of trial.

Defendants claim that 300 calories can be burned per 20 minute use of the Fit–One machine and that a 30–pound weight loss will occur on any user if daily 20 minute workouts are done by any user without any substantiation or documentation of such claims.

*Complaint,* ¶ 15(c), at 10.

The Defendants assert that any rejuvenation of the "calorie-burn" and "weight loss" claims of Paragraph 15(c) is precluded by the District Court's preliminary and permanent Injunction Hearing and Order of October 18, 1991, which properly and finally adjudicated all of the liability issues that were raised in the Plaintiff's Complaint.

Without regard to which claims were so resolved with finality, it is undisputed that the District Court consolidated the Injunction Hearing with the trial on the merits on those claims pursuant to Rule 65(a)(2), Federal Rules of Civil Procedure.[17] As a consequence, the only issues for resolution are whether all of the liability claims of the Plaintiff's Complaint were consolidated for determination at the Injunction Hearing and, if so, whether the Plaintiff had been afforded proper notice of that consolidation.

a. *Were All of the Liability Claims in the Complaint, or Only Those Dealing with Comparative Advertising, Resolved at the Injunction Hearing?*

 The Plaintiff argues that the Injunction Hearing "was never intended to resolve all NordicTrack's affirmative claims." *Plaintiff's Pretrial Memorandum,* at 27. Instead, the Plaintiff contends that the Hearing only adjudicated whether the "Defendants' advertisements comparing the price and mechanical and physiological similarities between the Fit One and the NordicTrack cross-country ski exerciser were misleading." *Id.* at 28. We disagree, for our close examination of: 1) the procedural events which led to the consolidated Hearing and trial; 2) the Transcript of the Injunction Hearing; and, 3) the Findings of Fact and Conclusions of Law of the District Court, convince us that the Plaintiff's contentions are without merit.

(1) *The Procedural Background Which Led to the Injunction Hearing.* At the commencement of this action on June 11, 1991, the Plaintiff sought a TRO to enjoin the Defendants from continuing a series of allegedly illegal practices. In advancing its current position, the Plaintiff now argues that the TRO was only sought to prevent the Defendants' deceptive comparative advertising. See, Complaint, ¶ 15(e). An examination of the Plaintiff's Motion papers does not bear out this contention[18] but, in fairness to the Plaintiff, it does appear that it altered the scope of its Motion, during its argument before the Magistrate Judge, and requested that the TRO only enjoin the misrepresentations that it perceived to be the most serious.[19] On September 9, 1991, after the District Court denied the Plaintiff's Motion for a

---

**17.** Rule 65(a)(2) provides in part:

**Consolidation of Hearing with Trial on Merits.** Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application.

**18.** The Plaintiff's Motion broadly requested injunctive relief preventing the Defendants "from publishing or disseminating any more false, misleading and deceptive advertising and requiring them to issue appropriate advertising or notices to correct the false and deceptive advertising already published and disseminated." *Motion for TRO,* at 1. Further, its Memorandum in Support of the TRO argued that, although "the most blatant" misrepresentation related to the Defendants' comparative advertising, *Memorandum,* at 4, "another very questionable area of the advertisements is the claims of specific calorie burn, weight loss and muscle exercise with the Fit–One by Defendants." *Memorandum,* at 7.

**19.** The change in the injunctive relief that the Plaintiff was requesting becomes apparent upon a review of the Magistrate Judge's Report and Recommendation which, despite the Motion papers' request for a broadly based TRO, only Recommended a TRO on the Defendants' comparative advertising, without ruling upon the propriety of a TRO for the remainder of the claims. *Report and Recommendation,* at 9.

The modification of the Plaintiff's request for injunctive relief, so as to focus upon the Defendants' comparative advertising, is also evident in the Plaintiff's explanation to the District Court of the procedural circumstances which prompted the Magistrate Judge's Recommendation:

The motion for a [TRO] with notice was presented and argued to the Magistrate on a nar-

TRO, and at the direction of the Court, the Plaintiff filed its Motion for a Preliminary Injunction. Despite the Plaintiff's "change in focus" at the Hearing before the Magistrate Judge, this Motion requested broad, unspecified injunctive relief, and the Plaintiff's Memorandum in Support of the Preliminary Injunction belies any contention that those proceedings were focused entirely upon the Plaintiff's comparative advertising claims, to the exclusion of the remainder of its claims. After discussing the assertedly misleading comparative advertising, the Plaintiff argued that "[t]he ads of Defendants are deceptive and misleading with respect to another area of claims made," *Memorandum*, at 14, and maintained that the Defendants' claims of technology and engineering breakthroughs [20] in the Fit–One should be enjoined. *Id.* at 14–15.

Given the foregoing, it is unmistakably evident that the Plaintiff prepared its Motions for injunctive relief with the comparative advertising at the center of its agenda, but it is equally evident that the Plaintiff made no contemporaneous record that its request for injunctive relief was so limited. Indeed, a fair reading of the Plaintiff's Motion papers reflects its intent to pursue an expansive injunction, premised upon a series of claims, of which the Defendants' comparative advertising was the centerpiece.

(2) *The Transcript of the Injunction Hearing.* In further support of its disclaimer of any interest in trying its claims—other than those relating to the Defendants' comparative advertising—at the Injunction Hearing, the Plaintiff now argues:

> In his opening statement, counsel for NordicTrack, Inc. verified with the court that a determination in that consolidated hearing would not resolve all claims at issue in the lawsuit. He also verified that the claims at issue in that consolidated hearing were

row part of the claims and Complaint of NordicTrack. The motion focused on the most blatant and facially false aspects of the unfair and misleading advertising of the Defendants, i.e., the price comparison and the unqualified comparison of two very *different* exercise machines. There are many other bases for objection to Defendants' advertising, but for purposes of this Motion, those were the only ones presented to the Magistrate.

NordicTrack's allegations that Defendants' advertisements comparing the price and mechanical and physiological similarities between the Fit One and the NordicTrack cross-country ski exerciser were misleading.

*Plaintiff's Pretrial Memorandum*, at 28.

A close examination of the Transcript of those proceedings reveals, however, that if the Plaintiff intended to make a Record of its intentions not to adjudicate its entire case, it failed to clearly do so.

In his opening statement, counsel for the Plaintiff and the Court engaged in the following colloquy:

> THE COURT: * * * We are going to have this as a preliminary and permanent injunction hearing.
>
> MR. REITE: Your Honor, one of the things I just want to clarify. To the extent there's different claims or causes **that arise subsequent to today's date,** as the world is a changing activity, new advertising, and that sort of thing, I assume that wouldn't preclude new and different claims **to the extent they arise. I'm not saying they will.**
>
> THE COURT: I think that's true.
>
> MR. REITE: Okay. Your Honor, as you said, we are here today to look at the plaintiff's motion to enjoin the defendants from certain advertising they are doing. **We're not here for the other aspects of this lawsuit, which are also involved but not at this point, in terms of damages.** There's some counterclaim, that sort of thing. They aren't happy with some of our advertising. **But it's my understanding, and we will proceed on the basis that this is for our motion for relief on the advertising we have identified.**

*Plaintiff's Response to Objections*, at 4.

**20.** These allegations are directly derived from allegations in the Complaint in ¶ 15(d). As stated, while Paragraph 15 contains five "areas" of misleading advertising, ¶ 15(a) through (e), only ¶ 15(e) relates to misleading comparative advertising.

*Transcript of September 30, 1991, Hearing,* at 4 [emphasis supplied].

Despite the Plaintiff's disavowals to the contrary, in view of this exchange, we are persuaded that the Plaintiff was appropriately cautious in preserving, for a subsequent trial, any future claims that might arise—given the evolving circumstances of a changing world—but we are unable to reasonably infer any intention on the Plaintiff's part to try the pending claims of its Complaint on some piecemeal basis. In our view, the Plaintiff's highlighting of its comparative advertising claim can be properly seen as a tactical device, and an effective one, to draw the District Court's attention to what the Plaintiff perceived as its most compelling claim.

(3) *The Order of October 18, 1991.* In its Order of October 18, 1991, the District Court expressed, among others, the following conclusions of law:

Number five. The Plaintiff has failed to demonstrate that Fit–One is not a cross-country ski simulator for the typical cross-country skier.

Six, Plaintiff has failed to demonstrate that proper use of the Fit–One does not exercise all the major muscle groups of the body.

Seven, Plaintiff has failed to demonstrate that the Fit–One does not consist of any technological or engineering break-throughs.

Eight, Plaintiff has demonstrated that Consumer Direct's price comparison between the Fit–One and the NordicTrack Pro model is likely to mislead consumers * * *

*Transcript of Proceedings, October 18, 1991,* at 10.

Each of these conclusions follows, subparagraph by subparagraph, the recitation of the Plaintiff's claims of misrepresentation as they are contained in Paragraph 15 of the Complaint—with the notable exception that the claims for "calorie-burn" and "weight loss" misrepresentations, which are contained in Paragraph 15(c), are not specifically addressed. Although the Plaintiff claims that the ostensible omission of a holding on the Paragraph 15(c) claims necessarily preserved

them for future adjudication, we are not so persuaded.

Had it been the intention of the District Court to preserve any claims for future adjudication, the Court could well have done so. Rather, the Court expressly held that "**all other relief requested by the Plaintiff is denied** unless special circumstances **in the future** require further injunctive relief." *Transcript of Proceedings, October 18, 1991,* at 12 (emphasis added). It is telling that "all" other requests for injunctive relief are "denied," with the only enumerated exception being related to any future advertising that the Defendants may market during the pendency of this litigation—the precise claim that the Plaintiff did properly preserve in the record of the Injunction Hearing.

In fact, the Plaintiff was granted—and is granted here—leave to supplement its claims, but only for "new advertising" which did not exist at the time that its Complaint was filed. To the extent that the Plaintiff has urged that the Orders which allowed supplementation, and which compelled the Defendants to supplement their discovery responses, demonstrate that its entire case was not adjudicated at the Injunction Hearing, we disagree. In allowing the Plaintiff to supplement its pleadings, so as to allege certain violations pertaining to recent advertisements, Magistrate Judge Noel reasoned as follows:

The court finds that the print ad and infomercial currently being run by defendants relates to the same issues contained in the original complaint involving allegations of deceptive price comparisons, and misleading or deceptive messages contained in defendants' ads. These new allegations do not seek to add new claims they merely seek to include in the complaint conduct that occurred subsequent to the filing of the complaint, and preliminary injunction hearing related to the previous claims. * * *

Defendants' argument that plaintiff is precluded from supplementing its complaint because Judge MacLaughlin ruled on the merits of each issue contained in the complaint * * * is misplaced. The preliminary injunction hearing only addressed the

conduct of defendants that occurred prior to the hearing. The current conduct that plaintiff seeks to add to its complaint occurred after the filing of the complaint. *Order of June 17, 1993,* at 3–4.

While it is true that the Defendants objected to supplemental claims on the same basis as they do here—namely, that the 1991 Injunction Hearing was on the merits of the entire Complaint—the Magistrate Judge did not rule against that argument, he merely found that it was "misplaced." As is evident from the record, the issue of supplementation was decided solely on the ground that new advertising was being contested in the proposed supplemental pleadings and not because the Injunction Hearing was dispositive of all then pending claims. Here, in contrast, the argument as to the conclusiveness of the Injunction Hearing is properly raised and, for all of the foregoing reasons, we find it meritorious.[21]

b. *Was the Plaintiff Afforded Proper Notice of the Consolidation of All its Liability Claims Under Rule 65(a)(2), Federal Rules of Civil Procedure?*

■ The Plaintiff contends that the issues properly litigated at the Injunction Hearing could only include "those issues that are adequately identified and for which the parties receive adequate notice and an opportunity to prepare." *Plaintiff's Pretrial Memorandum,* at 26. Albeit implicitly, the Plaintiff appears to argue that if its "calorie-burn" and "weight loss" claims were finally adjudicated at the Injunction Hearing, it failed to receive proper notice of such a consolidation and a fair opportunity to prepare for the adjudication of those claims.

In this regard, although the Rule states that advancement and consolidation may be ordered after the commencement of the preliminary Injunction Hearing, the Supreme Court has held that "the parties should normally receive clear and unambiguous notice of the court's intent to consolidate the trial

and the hearing either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). Most importantly, if we were to find that the notice of consolidation was inadequate, then the current stage of these proceedings provides us with an opportunity to correct the prejudice, if any, that may have been suffered.

■ However, on the record as a whole, we find *no deficiency in the notice given.* While, ordinarily, notice that is given after the conclusion of the Hearing will be insufficient, and may even raise constitutional due process concerns, *Update Art, Inc. v. Charnin,* 110 F.R.D. 26, 36 (S.D.N.Y.1986), citing, *Gellman v. Maryland,* 538 F.2d 603, 604–06 (4th Cir.1976), even notice after commencement of the Hearing can be sufficient, depending upon all of the circumstances of the case. *Update Art, Inc. v. Charnin,* supra at 36 (sufficiency of notice under Rule 65(a)(2) dependent on circumstances of each case); *Fenstermacher v. Philadelphia National Bank,* 493 F.2d 333, 337 (3rd Cir.1974) (formal announcement after commencement of proceedings not *per se* improper).

Here, we are strongly influenced by the Plaintiff's failure to claim improper or insufficient notice at the time of the Injunction Hearing, when the District Court advised that consolidation was being directed, in accordance with the provisions of Rule 65(a)(2). Although the Plaintiff's counsel made certain clarifications on the record in response to the consolidation Order of the Court, neither party objected to the consolidation or complained of any prejudice. "In our view, when a trial judge announces a proposed course of action which litigants believe to be erroneous, the parties detrimentally affected must act expeditiously to call the error to the judge's attention or to cure the defect, not lurk in the bushes waiting to ask for another trial when

---

**21.** We note one last piece of evidence which supports our conclusion. In meeting with Magistrate Judge Noel prior to the issuance of his Pretrial Order of June 9, 1992, the parties identified but three remaining issues to be litigated: 1) the amount of damages to which the Plaintiff was entitled; 2) enforcement of the injunction; and, 3) the false advertising claims of the Defendants. The Plaintiff did not contend at that time—nearly eight months after the Injunction Hearing—that any claims of "calorie-burn" or "weight loss" remained to be fully litigated.

the litigatory milk curdles." *Reilly v. United States*, 863 F.2d 149, 160 (1st Cir.1988). Indeed, "in view of [the Plaintiff's] silence in the face of the courts clear and unambiguous statement of intent to consolidate, and its neglect to request more time at that point, [the Plaintiff] cannot now rightfully complain about the court's order." *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 913 (1st Cir.1989). In view of the record before us, even if we were to have found some inadequacy in notice—which we do not—we would conclude, nevertheless, that the Plaintiff had waived any objection to the notice provided. See, *id.; Fenstermacher v. Philadelphia National Bank*, supra at 337 (by failing to object Fenstermacher acquiesced in the procedure followed).

F. *The Defendants' Motion to Compel Production of NordicTrack's Business Plans and to Enforce Magistrate Judge Noel's June 17, 1993 Order.*

The Defendants have moved to compel the Plaintiff's "complete" business plans for the years 1990, 1991, 1992 and 1993, and to enforce the Order of June 17, 1993, by Magistrate Judge Noel.[22] Since the contours of this Motion have been fully explored on at least two prior occasions, our discussion will be abbreviated.

On July 20, 1993, following a "standstill" agreement while settlement was explored and during the time in which an appeal of the Magistrate Judge's Order was pending, the Plaintiff delivered excerpts of its Business Plans for fiscal years 1992 and 1993, but nothing was produced for the years of 1990 or 1991. The materials which were disclosed detail the Plaintiff's business goals, executive outline, mission, product line, market analysis and advertising plans for the 1992 and 1993 fiscal years.

The Defendants argue that they are entitled to complete discovery of the entirety of the 1992 and 1993 Business Plans and that complete disclosure is essential in order to place the information in context, and to appraise the completeness of the production to date. In opposition, the Plaintiff maintains that it provided a complete disclosure of those materials which relate to its in-home simulation cross-country skier product line, while the remainder of the materials sought are irrelevant since they pertain to the Plaintiff's other product lines which are not the subject of this dispute. Alternatively, the Plaintiff appears to contend that a Protective Order is necessary in order to protect against the improper disclosure of trade secrets.

■ In our view, the Plaintiff's objections are not well-taken, particularly because they were raised, argued and rejected by Magistrate Judge Noel. In broadly expansive terms, the Magistrate Judge ruled that the Defendants' "motion to compel with respect to plaintiff's annual plans and weekly media reports is * * * granted." *Order of June 17, 1993*, at 9. In addition, the Magistrate Judge also denied the Plaintiff's Motion for a Protective Order, and each of the Magistrate Judge's rulings was affirmed on appeal. Accordingly, in the absence of a cogent reason to do so, and the Plaintiff has not advanced one, we decline to revisit the same issues at this stage of the proceedings.

As a final objection, the Plaintiff reasserts its concern that disclosure of the requested information to defense counsel will jeopardize the confidentiality of the information since the same counsel has represented competitors of the Plaintiff in the past. To reiterate, however, in the absence of a convincing showing that the Plaintiff's concerns are founded in fact, we are unable to ascribe greater significance to those apprehensions than provided by the Plaintiff's surmise. In sum, we find no legitimate basis to preclude the discovery of the information that the Defendants have requested and that the

---

**22.** In March of 1992, the Defendants served their First Requests for the Production of Documents. Request No. 11 asked the Plaintiff to "produce all documents which constitute * * * business plans * * * prepared by or on behalf of NordicTrack after January 1, 1989."

After the Plaintiff objected on grounds of relevance and the Defendants moved to compel discovery, the Magistrate Judge issued an Order on June 17, 1993, which granted the Defendants' Motion. The Magistrate Judge's ruling was affirmed on appeal to the District Court.

Court has already directed the Plaintiff to produce.[23]

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiff's Motion [Docket No. 166] to Extend Discovery for the Purpose of Deposing Certain Witnesses Newly–Identified by Defendants is GRANTED.

2. That the Plaintiff's Motion [Docket No. 174] for a Rule 26(c) Protective Order Foreclosing Consumer Direct, Inc.'s Counsel from Representing Another NordicTrack Competitor is DENIED.

3. That the Plaintiff's Motion [Docket No. 182] for Supplementation of Pleadings is GRANTED.

4. That the Plaintiff's Motion [Docket No. 184] for a Rule 39(c) Advisory Jury is DENIED.

5. That the Defendants' Motion in Limine [Docket No. 157] prohibiting the Plaintiff from introducing evidence of or making any claim for damages is DENIED.

6. That the Defendants' Motion in Limine [Docket No. 157] prohibiting the Plaintiff from introducing evidence of or making any reference to its "calorie-burn" and "weight loss" claims is GRANTED.

7. That the Defendants' Motion [Docket No. 160] to Compel Production of NordicTrack's Business Plans and to Enforce Magistrate Judge Noel's June 17, 1993 Order is GRANTED.

---

**23.** Insofar as the Defendants' Motion relates to outstanding discovery requests for the Plaintiff's 1990 and 1991 Business Plans, the Plaintiff's position throughout these proceedings has been that no such documents exist. This position is substantiated by the Defendants' own submissions to this Court. The deposition testimony of Nancy Everson of NordicTrack in February of 1993 reveals that the Plaintiff's business plan evolved over the "last year, year and a half formally." *Everson Deposition*, at 13. To her knowledge, there were no informal memos or documents which could be called a marketing or business plan prior to that time. *Id.*

Obviously, the Plaintiff is not obligated to create a document that does not otherwise exist, and is precluded, as a matter of physical fact, to produce that which does not exist. Nevertheless, the Plaintiff has a responsibility to produce all materials which respond to the Defendants' discovery requests that are not otherwise privileged. If documentary information is uncovered which relates to the Plaintiff's "Business Plans" in fiscal years 1990 and 1991, the Plaintiff is obliged to produce the same.